# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| SHEILA A. MANNIX;<br><br>        Plaintiff,<br><br>        v.<br><br>LISA MADIGAN, as an individual and in her official capacity as Illinois Attorney General and Head Administrative Officer of Illinois Attorney General's Office employees, agents, and persons acting on its behalf;<br><br>RICHARD A. DEVINE, as an individual and in his past official capacity as Cook County State's Attorney and Head Administrative Officer of Cook County State's Attorney's Office employees, agents, and persons acting on its behalf;<br><br>MICHAEL J. WALLER, as an individual and in his official capacity as Lake County State's Attorney and Head Administrative Officer of Lake County State's Attorney's Office employees, agents, and persons acting on its behalf;<br><br>THOMAS J. DART, as an individual and in his official capacity as Cook County Sheriff and Head Administrative Officer of Cook County Sheriff's Office employees, agents, and persons acting on its behalf;<br><br>MARK C. CURRAN, Jr. as an individual and in his official capacity as Lake County Sheriff and Head Administrative Officer of Lake County Sheriff's Office employees, agents, and persons acting on its behalf; | **RECEIVED**<br><br>JAN. X 8 2009<br>JAN 8, 2009<br>MICHAEL W. DOBBINS<br>CLERK, U.S. DISTRICT COURT<br><br><br>09cv103<br>JUDGE SHADUR<br>MAG. JUDGE SCHENKIER<br><br><br><br><br><br>Jury Demand Requested |

DOROTHY BROWN, as an individual and )
in her official capacity as Clerk of the Circuit)
Court of Cook County and Head )
Administrative Officer of Cook County )
Circuit Court Clerk's Office employees, )
agents, and persons acting on its behalf; )
)
SALLY D. COFFELT, as an individual and )
in her official capacity as Clerk of the 19th )
Judicial Circuit Court, Lake County, and )
Head Administrative Officer of 19th Judicial)
Circuit Court, Lake County Clerk's Office )
employees, agents, and persons acting on its )
behalf; )
)
TIMOTHY C. EVANS, as an individual and)
in his official capacity as Chief Judge of the )
Circuit Court of Cook County, and Head )
Administrative Officer of the Cook County )
Circuit Court employees, agents, and persons)
acting on its behalf; )
)
JAMES K. BOORAS, as an individual and )
in his official capacity as Chief Judge of the )
19th Judicial Circuit Court, Lake County, )
and Head Administrative Officer of the 19th )
Judicial Circuit Court, Lake County, )
employees, agents, and persons acting on its )
behalf; )
)
CHRISTOPHER C. STARK, as an )
individual and in his official capacity as )
circuit judge, and as a past Chief Judge of )
the 19th Judicial Circuit Court, Lake County,)
and Head Administrative Officer of the 19th )
Judicial Circuit Court, Lake County, )
employees, agents, and persons acting on its )
behalf; )
)
DAVID M. HALL, as an individual and )
in his official capacity as circuit judge and as)
a past Chief Judge of the 19th Judicial )
Circuit Court, Lake County, and Head )
Administrative Officer of the 19th Judicial )
Circuit Court, Lake County, employees, )
agents, and persons acting on its behalf; )

2

MOSHE JACOBIUS, as an individual and )
in his official capacity as Presiding Judge of )
the Domestic Relations Division of the )
Circuit Court of Cook County, and Head )
Administrative Officer of the Domestic )
Relations Division of the Cook County )
Circuit Court employees, agents, and )
persons acting on its behalf; )
)
JANE D. WALLER, as an individual and in )
her past official capacity as Presiding Judge )
of the Family Division of the 19th Judicial )
Circuit Court, Lake County, and Head )
Administrative Officer of the Family )
Division of the 19th Judicial Circuit Court, )
Lake County, employees, agents, and )
persons acting on its behalf; )
)
THADDEUS S. MACHNIK, as an )
individual and in his official capacity as a )
Cook County, Illinois Associate Judge; )
)
RAUL VEGA, as an individual and in his )
official capacity as a Cook County, Illinois )
Circuit Judge; )
)
KATHLEEN ZAWISCZ, Independent )
Executrix of the Estate of James G. )
Donegan, Deceased )
)
KAREN G. SHIELDS, as an individual and )
in her past official capacity as a Cook )
County, Illinois Associate Judge; )
)
R. MORGAN HAMILTON, as an )
individual and in her official capacity as a )
Cook County, Illinois Associate Judge; )
)
JEANNE CLEVELAND BERNSTEIN, as )
an individual and in her official capacity as a )
Cook County, Illinois Circuit Judge; )
)
LEROY K. MARTIN, JR., as an individual )
and in his official capacity as a Cook County )
Illinois Circuit Judge; )

)
EILEEN M. BREWER, as an individual and )
in her official capacity as a Cook County, )
Illinois Circuit Judge; )
)
VERONICA B. MATHEIN, as an individual)
and in her official capacity as a Cook )
County, Illinois Circuit Judge; )
)
DANIEL J. SULLIVAN, as an individual )
and in his official capacity as a Cook )
County, Illinois Circuit Judge; )
)
BARBARA M. MEYER, as an individual )
and in her official capacity as a Cook )
County, Illinois Circuit Judge; )
)
THOMAS J. KELLEY, as an individual and )
in his official capacity as a Cook County, )
Illinois Circuit Judge; )
)
DRELLA SAVAGE, as an individual and in )
Her official capacity as a Cook County, )
Illinois Circuit Judge; )
)
AURELIA PUCINSKI, as an individual and )
in her official capacity as a Cook County, )
Illinois Circuit Judge; )
)
SAMUEL J. BETAR, III, as an individual )
and in his official capacity as a Cook )
County, Illinois Associate Judge; )
)
DONALD H. GEIGER, as an individual and)
in his past official capacity as a Lake )
County, Illinois Associate Judge; )
)
DIANE E. WINTER, as an individual and in)
her official capacity as a Lake County, )
Illinois Circuit Judge; )
)
JOSEPH R. WALDECK, as an individual )
and in his official capacity as a Lake )
County, Illinois Associate Judge; )
)
JORGE L. ORTIZ, as an individual and in )

4

his official capacity as a Lake County, )
Illinois Circuit Judge; )
)
HELEN S. ROZENBERG, as an individual )
and in her official capacity as a Lake )
County, Illinois Associate Judge; )
)
NANCY S. WAITES, as an individual and )
in her official capacity as a Lake County, )
Illinois Associate Judge; )
)
GEORGE D. STRICKLAND, as an )
individual and in his official capacity as a )
Lake County, County, Illinois )
Associate Judge; )
)
LUIS A. BERRONES, as an individual )
and in his official capacity as a Lake County,)
County, Illinois Associate Judge; )
)
RAYMOND J. MCKOSKI, as an individual )
and in his official capacity as a Lake County,)
Illinois Circuit Judge; )
)
GERALD M. ZOPP, JR., as an individual )
and in his official capacity as a McHenry )
County, Illinois Associate Judge; )
)
DAVID J. WESSEL, as an individual, as an )
attorney and in his official capacity as a state)
court agent and LAW OFFICES OF )
WESSEL & DOHENY; )
)
JONATHAN GAMZE, as an individual, as a)
psychiatrist and in his official capacity as a )
state court agent and )
JONATHAN GAMZE, MD, PC; )
)
GAIL GROSSMAN, as an individual, as a )
psychologist and in her official capacity as a )
state court agent and CENTER FOR )
COMPASSIONATE DIVORCE; )
)
JERRY ZABIN, as an individual, as a social )
worker and in his official capacity as a )
subcontractor of GAIL GROSSMAN, state )

court agent, and ZABIN AND     )
ASSOCIATES, PC;     )
     )
HENRY LAHMEYER, as an individual, as )
a psychiatrist and in his official as a state )
court agent and HENRY LAHMEYER, MD )
& ASSOCIATES;     )
     )
DANIEL P. FISHER, as an individual, as a )
psychologist and in his official capacity as a )
subcontractor of HENRY LAHMEYER,     )
state court agent, and CENTER FOR     )
PSYCHOLOGICAL SERVICES, LLC;     )
     )
PAUL R. GORECKI, as an individual, as a )
psychologist and in his official capacity as a )
state court agent and PAUL R. GORECKI, )
PhD, PC;     )
     )
ROBERT M. GALATZER-LEVY, as an     )
individual, as a psychiatric consultant, and )
ROBERT M. GALATZER-LEVY, MD, PC )
     )
PATSY HOLT BROWN, as an individual, )
as a counselor, and PATSY HOLT     )
BROWN PSYCHOTHERPY;     )
     )
DANIEL P. SHEETZ, SR.;     )
     )
SANDRA G. NYE, as an individual, as an )
attorney and in her official capacity as a state)
court agent and LAW OFFICES OF NYE & )
ASSOCIATES, LTD;     )
     )
JONATHAN D. NYE, as an individual, as )
an attorney and in his official capacity as a )
state court agent and LAW OFFICES OF     )
NYE & ASSOCIATES, LTD;     )
     )
JOHN C. VOJTA, as an individual, as an )
attorney and in his official capacity as a state)
court agent and LAW OFFICES OF JOHN )
C. VOJTA;     )
     )
DONNALYN GURGIOLO, as an     )
individual, as an attorney and in her official )

capacity as a state court agent and LAW          )
OFFICES OF JOHN  C. VOJTA;                        )
                                                  )
ANNA MARKLEY BUSH, as an                          )
individual, as an attorney and in her official )
capacity as a state court agent and LAW          )
OFFICES OF BUSH & HEISE;                          )
                                                  )
MITCHELL F. ASHER, as an                          )
individual, as an attorney and in his official )
capacity as a state court agent and LAW          )
OFFICES OF MITCHELL F. ASHER;                     )
                                                  )
STEVEN E. RIZZMAN, as an                          )
individual, as an attorney and in his official )
capacity as a state court agent and LAW          )
OFFICES OF MITCHELL F. ASHER;                     )
                                                  )
CHARISSE A. BRUNO, as an                          )
individual, as an attorney and in her official )
capacity as a state court agent and LAW          )
OFFICE OF CHARISSE A. BRUNO;                      )
                                                  )
LAUREL BLACK RECTOR, as an                        )
individual, as an attorney and in her official )
capacity as a state court agent and LAW          )
OFFICE OF LAUREL BLACK RECTOR                     )
                                                  )
THOMAS A. O'DONNELL, JR., as an                   )
individual, as an attorney and O'DONNELL )
& JULIAN, LLP;                                    )
                                                  )
MICHAEL D. PECHNICK, as an                        )
individual, as an attorney and in his official )
capacity as a state court agent and LAW          )
OFFICE OF MICHAEL D. PECHNICK;                    )
                                                  )
MARY THERESE DOHENY, as an                        )
individual, as an attorney and in her official )
capacity as a state court agent and LAW          )
OFFICES OF WESSEL & DOHENY;                       )
                                                  )          Jury Demand Requested
                                                  )
JOHN DOE #1, et al.,                              )
                       Defendants.                )

## VERIFIED COMPLAINT UNDER 18 U.S.C. §§ 1961-1968
### *Federal Question Civil Action under RICO Act*

**COMES NOW,** on this 7th day of January 2009, the Plaintiff, SHEILA A. MANNIX ("Dr. Mannix"), unrepresented and indigent, as and for her **Verified Complaint Under 18 U.S.C. §§ 1961-1968**, the Racketeer Influenced and Corrupt Organizations Act (RICO), to respectfully state as follows to this Honorable Court in support thereof:

### VENUE AND JURISDICTION

1.  All events giving rise to the claims set forth herein occurred and/or arose in the State of Illinois in the Counties of Cook, Lake, and McHenry, and some events extended across state lines to Connecticut and apparently to Arizona.

2.  This Court has subject matter jurisdiction over the controversies between the parties under 28 U.S.C. § 1331 and 18 U.S.C. § 1964 since the controversies involve questions arising under the statutes of the United States including but not limited to 18 U.S.C. §§ 1961-1968.

3.  Venue is proper in this judicial district of the Northern District of Illinois, Eastern Division, under 18 U.S.C. § 1965 because all or the majority of the defendants reside in this judicial district and all the defendants do business in this district.

### PARTIES

#### A. Plaintiff

4.  The current named plaintiff, Dr. Mannix, is a US citizen and resident of Illinois who was born on September 14, 1960 in Connecticut. She has continually resided in either Cook or Lake County, Illinois since commencing graduate school at the University of Illinois at Chicago in September 1983. Dr. Mannix is an Illinois-licensed clinical psychologist and PhD-level trained

research neuroscientist who was actively engaged in for-profit and not-for-profit intrastate and interstate professional activities before becoming, in 2002, a verified witness, victim, and/or informant of the judicial "bribery scheme" corruption operating in the venues provided by the legal entity, the State of Illinois, and its constitutionally-authorized "subsidiary" legal entities. (D'Agostino v. Lynch, 382 Ill. App. 3d 960, 887 N.E.2d 590, 320 Ill. Dec. 446) [**Consolidated Exhibit C** filed separately in Second Supplemental Filing: Exhibits in Support of Complaint. All Exhibits named herein are found in the Second Supplemental Filing: Exhibits in Support of Complaint and are incorporated herein in entirety. ]

5.  In accordance with federal law, Dr. Mannix reverses the right to amend in additional plaintiffs named in **Appendix D: Question 4**: Alleged Victims and how each was allegedly injured filed separately in First Supplemental Filing: Appendices in Support of Complaint.]

**B. Defendants**

6.  See **Appendix B Question 2**: Defendants, alleged misconduct, and basis of liability.  In accordance with federal law, Dr. Mannix reverses the right to amend in other defendants as named in **Appendix C: Question 3**: Alleged Wrongdoers and alleged misconduct of each and/or as named in **Appendix D: Question 4**: Alleged Victims and how each was allegedly injured, specifically, alleged victims who subsequently became alleged wrongdoers.

## PRELIMINARY STATEMENT

**A. Complaint at Hand**

7.  From the Introduction to Dr. Mannix's **Petition for Rehearing Regarding Refusal of Injunction** filed November 4, 2008 before the Second District Appellate Court, Case No. 2-08-0263, which sought review of Defendant Lake County ex-Judge Jane Waller's March 28, 2008 order refusing an injunction and who, with full knowledge that the petitioners would never get a

hearing, transferred Dr. Mannix and her sons' Petition for Order of Protection case to the verified

corrupt Cook County Circuit Court in direct violation of the Illinois Domestic Violence Act,

Illinois Supreme Court Rules, and Federal Constitution:

### Introduction

To the Honorable Justices of the Appellate Court of Illinois, Second District, namely,

Justices O'Malley, Jorgensen, and Burke:

| | |
|---|---|
| **Teenager:** | **Mom, why hasn't anyone done anything now that we have the bribery ruling?** |
| **Parent:** | **That's a legitimate question, my darling. What do you think might be a valid answer to it?** |
| **Teenager:** | **Because the people who are supposed to help us are involved in hurting us.** |

8.  Frankly, the instant case is very complicated (by the defendants' malicious design), but

can be concisely summed up, with no disrespect whatsoever, as a case of a verified corrupt state

court, aided and abetted by all responsible state, county, and municipal entities, exploiting an

Illinois mom's family who are the victims of an abusive, deadbeat ex-husband, in conspiracy

with the ex-husband who wanted to avoid child support obligations, beginning in January 2002

to the present, because the state court agents believed the mom's family in Connecticut to be

wealthy and additional government funds can be absconded through the public corruption

allegedly involved with an organized crime family in Arizona.

9.  Dr. Mannix brings forth this federal question civil RICO complaint in good faith and for

just cause. This complaint is warranted in law and in fact and is verified by affidavits and other

evidentiary materials, attached and incorporated herein as well as which can be produced during

discovery. The allegations herein can be further supported by substantial witness testimony

10

including expert testimony of the existence of similar rackets in family courts provided for in other states' governments.

10. Dr. Mannix will seek permission from the Court to scan all discovery documents onto CDs for the convenience of the Court and all parties. Said documents include approximately 60 court transcripts and a **vast** number of official notices, correspondences, and state court pleadings, including Dr. Mannix's *pro se* pleadings which were "***Prepared & Filed as an Offer of Proof***," for specific use in the instant action commencing on July 8, 2005 with "**Emergency Motion for the Separation of Custody/Visitation and Financial Issues and Other Relief,**" "**Petition for Direct Criminal Contempt,**" "**Petition for Indirect Criminal Contempt,**" and "**Petition for Temporary Relief.**"

11. Dr. Mannix will establish claims under Sections 1962(c) and (d) of the RICO Act, specifically, with court and financial records, other evidentiary materials, and the testimony of many witnesses, including many past and current victims of the same racketeering predicate acts in the same "legal entity" through a past and ongoing, open-ended "pattern of racketeering activity" which exists separate from the legitimate operations of the legal entity and involves many overlapping defendant "persons" who are distinct from the legal entity. That if this Court holds the defendants in this case accountable for their illegal acts (as well as the defendants of multiple similar cases slated to be filed in due course), the legitimate operations of the legal entity will continue uncontaminated and less financially compromised.

12. Dr. Mannix will establish that the legal entity, the State of Illinois [and its constitutionally-derived sub-legal entities], is a legitimate business enterprise that affects interstate commerce and that the racketeering activity has an adverse impact on said commerce. Dr. Mannix will establish **many** racketeering predicates perpetrated within ten years. Dr. Mannix

will establish the relatedness and continuity elements of the pattern of racketeering activity. Dr. Mannix will establish that the defendant "persons" conduct or participate in the conduct of said enterprise's affairs, specifically, the defendants "operate or manage" the enterprise by being employed by the enterprise or by being associated with the enterprise and its conduct. **Dr. Mannix will establish that the defendants maliciously manipulate the legitimate operations of the enterprise for the purpose of benefiting financially from the pattern of racketeering activity against Dr. Mannix and many other Illinois residents and their children**.

13. Dr. Mannix will establish **unequivocally** that she was and continues to be injured in her businesses and property **by reason of** the pattern of racketeering activity, i.e., "a direct relationship between the injury suffered and the alleged injurious conduct" of the defendants. Moreover, Dr. Mannix will establish that malicious impoverishment is a calculated predicate act of the racketeering activity under 18 U.S.C. §§ 1512 and 1513 above and beyond 18 U.S.C. § 1951. Dr. Mannix will establish legal and proximate cause; that she has been directly injured by acts of racketeering in an open-ended pattern in violation of public policy and the public trust. Dr. Mannix will establish conspiracy under 18 U.S.C. § 1962(d). ["If conspirators have a plan which calls for some conspirators to perpetrate crime and others to provide support, the supporters are as guilty as the perpetrators." Salinas v. United States, 522 U.S. 22, 63-64 (1997)]

14. Additionally, the residents and businesses of Illinois and the out-of-state businesses who wish to do business with residents and businesses of Illinois were and continue to be injured in their businesses and/or properties by reason of the pattern of racketeering activity in violation of established federal RICO law in this federal district, which includes but is not limited to the theft of municipal, county and state public services and fraud against the municipal, county, state, and

federal governments against the People of the State of Illinois and the People of the United States of America.

### B. The Dark Alley: Illinois' Family Courts

15. Respectfully, Dr. Mannix is not "a disgruntled divorcee" nor "a disappointed litigant" as the Honorable Seventh Circuit Justices Easterbrook, Coffey, and Manion mislabeled her in their factually erroneous "nonprecedential disposition" issued on July 3, 2007 in Consolidated Appeal Nos. 06-2120, 06-2369 & 06-2435. Dr. Mannix is a victim of a verified judicial "bribery scheme" in the Family Court of the Circuit Court of Cook County, Chicago, Illinois. Dr. Mannix is a victim of federal RICO crime that involves the theft of public services and fraud against the government by public officials in the State of Illinois, individually and in conspiracy.

16. Dr. Mannix again quotes from her **Petition for Rehearing Regarding Refusal of Injunction** filed November 4, 2008 before the Second District Appellate Court, Case No. 2-08-0263, and denied:

> **The ends of justice preclude** this Court from making the unsupported finding that what transpired on October 9, 2007 under 750 ILCS 6/214(b)(17) was the same as what might have transpired in an evidentiary hearing under an injunction proceeding under 735 ILCS 5/11 *et seq.* with a fully supported pleading with multiple exhibits [C-0171-C-0245], especially in light of the fact that pursuant to the record, even in the absence of the transcript, the evidentiary hearing on October 9, 2007 detailed undeniable evidence supporting the entry of an emergency protection order for Dr. Mannix and her teenagers. **But Judge Waller could not enter it because she was fully aware that it would indict Judges Geiger, Winter, Rozenberg, Waites, Strickland, Waldeck, Ortiz, and Starck for their actions in 2005, 2006, and the beginning of 2007.**
>
> Note that Dr. Mannix's legitimate goal was to get this matter before the Head Family Court Judge of Lake County, Jane Waller, who is married to Lake County State's Attorney Michael Waller to complete the record for Lake County. Dr. Mannix purposely filed extensive documents and did not go further into debt to obtain the transcripts to establish the record for the RICO action regarding the pattern of practice that no matter what binding statutory law or case law one cites and no matter if one has multiple transcripts or none in conjunction with definitive material evidence of criminal acts, when it comes to family court

matters, the trial court and reviewing courts will act in violation of the Federal Constitution.

**It was not a coincidence that the bribery scheme ruling came in the appeal of a Chancery/Law Division case when the exact same "direct evidence" has been put before both the First and Second Appellate Courts** *ad nauseam* **with regard to the family court cases.** Quoting Dr. Mannix's statements to Federal Judge Shadur at Page 16, Lines 17-21 of the certified Report of Proceedings, April 18, 2008, USDC Case No. 08 C 1883, *"... and we looked into the impact and the political impact of the White House on what cases the U.S. Attorney is prosecuting. And the estimated $12 billion dollar child-trafficking industry seems to be the answer to that question. They are making too much money, Sir."*

17. On October 3, 2002, during a 12:30 p.m. appointment, in the Law Offices of Wessel & Doheny at 188 West Randolph Street, Suite 1100, Chicago, Illinois, the following exchange took place between Dr. Mannix and Defendant Wessel, who had just been appointed on September 18, 2002 by Defendant Machnik as the Child Representative to Dr. Mannix's nine-year post-divorce, domestic violence and child support case in direct opposition to controlling Illinois law and **for the sole financial benefit of the racket participants**:

| | |
|---|---|
| **Def. Wessel** | **Why do you look so anxious? You don't really think that you could lose custody of your children, do you?** |
| **Dr. Mannix** | **In a just system, no. In this system, I don't know.** |
| **Def. Wessel** | **You're exactly right. You should view your situation as if you've been dragged into a dark alley and you're being mugged and there's nothing you can do about it.** |
| | **The judge has power over your very life. Judges can order the death penalty. And now I have power over your children's lives. So you'd better be nice to me.** |

18. That exchange memorialized the undeniable fact that, in the year 2002, Dr. Mannix's federally-protected civil rights and liberty interests, including parenting rights and property rights, were usurped by a criminal financial motive.

19. Notwithstanding (a) felony harassment of a witness in conspiracy with the RICO predicate act of extortion under color of official right and the wrongful use of actual fear of the loss of her children committed on September 18, 2002 [720 ILCS 5/32-4a and 18 U.S.C. § 1951(a)], (b) the exchange confirmed on court record on August 19, 2005 [Certified Report of Proceedings, Page 75, Lines 20-24], (c) the harassment of a witness repeated on October 16, 2002 outside Def. Machnik's Daley Center Courtroom 3001 in conspiracy with Def. S. Nye and Def. Pechnick and, again, on November 18, 2002 again in Def. Wessel's office, but this time in conspiracy with Def. S. Nye, Def. Pechnick, and Def. Sheetz, and including Def. Sheetz physically threatening Dr. Mannix during over two hours of verbal, emotional, and mental battering in the presence of the attorneys and Def. Wessel threatening to put Dr. Mannix's children in a foster home if she did not submit to the extortion, and Def. Nye, as she sipped her martini at the *Allegro* across from Wessel's office, making the statement to Dr. Mannix that she "is like a Jew in the Holocaust" (confirmed before witnesses on December 6, 2002), and (d) verification from multiple sources that similar exchanges with and treatment of women in his office have been repeated to harass and intimidate mothers in other Cook County cases to which he has been appointed, **Def. Wessel's analogy is hauntingly accurate** and **establishes motive, intent, and opportunity** to violate federal RICO law in conspiracy with the judiciary and other state court agents and those acting on their behalf in the venues provided by the State of Illinois government, because, in part, in this case, they believed Dr. Mannix and her parents in Connecticut to be extremely wealthy. Other funds and services are absconded from the municipal, county, state, and federal governments.

20. Specifically:

15

a.  The "dark alley" is Illinois' family courts aided and abetted by all state, county, and municipal entities with fiduciary duty and liability to hold rackets in check;

b.  The "mugging" victims are Dr. Mannix, her children, her family on the East Coast, the People of the State of Illinois, and the People of the United States doing business and/or wishing to do business with the legal entity, the State of Illinois, and its constitutionally-authorized "subsidiary" legal entities, namely, (A.) The Legislature (Article IV), (B.) The Executive (Article V), (C.) The Judiciary (Article VI), and (D.) Local Government (Article VII), including but not limited to multiple sub-legal entities composed of elected public officials **and/or MULTIPLE public officials appointed by the Illinois Legislature, the Illinois Governor, and/or Illinois Supreme Court justices**, e.g., the following sub-legal entities: the Illinois Supreme Court, Appellate Courts, Circuit Courts, child protective services agency [IDCFS Budget FY 2007 $1.3 billion], child support enforcement agency [DHFS Budget FY 2007 $16 billion], disciplinary agencies [Courts Commission, Judicial Inquiry Board, Attorney Registration and Disciplinary Commission, Illinois Department of Financial and Professional Regulation (IDFPR); alone the IDFPR Budget FY 2007 is $98.8 million (See **Consolidated Exhibit D (IDFPR) and Consolidated Exhibit E (JIB))**], regulatory entities [Office of the Illinois Auditor General, Office of the Executive Inspector General of the Governor's Office, Illinois Executive Ethics Commission, etc.], and multiple "internal affairs" sub-entities, county boards,

county sheriffs' offices, county state's attorneys' offices, county circuit court

clerk's offices, local law enforcement departments, et al.;[1]

    c.  The "**muggers**" are the named and as yet un-named defendants and wrongdoers.

21. Respectfully and humbly, what remains to be seen is if the federal court will **"do**

**something about it,"** especially in light of the April 2, 2008 opinion issued by the First District

Appellate Court in Chicago, which states in pertinent part, "Dr. Sheila Mannix of the IFCAA[2]

assisted Lynch in bringing charges and filing complaints against the corrupt judges. Although

Mannix did not provide Lynch with any information regarding Judge White, she produced direct

evidence regarding several other judges' involvement in the bribery scheme." D'Agostino v.

Lynch, 382 Ill. App. 3d 960, 887 N.E.2d 590, 320 Ill. Dec. 446.

22. Dr. Mannix has lost in excess of **one million dollars** in assets, investments, and income[3]

as a direct result of the "mugging." The injury to the federal, state, county, and municipal

---

[1] Federal Aid to Illinois for Budget FY 2007 was officially reported to be $13.543 billion by the Secretary of State. Federal law mandates that if federal law is violated in connection with federal aid, the aid is to terminate, e.g., domestic violence prevention and child support enforcement funds. Dr. Mannix will establish that multiple Executive, Legislative, and Judicial Branch public officials of the State of Illinois have been fully informed that federal laws are being violated in connection with federal aid and that **they have done NOTHING but aid and abet the violation of federal law on the US taxpayers' tab** in the family court racket operating against many Illinois residents including Dr. Mannix and her family in the instant complaint in violation of RICO, 18 U.S.C. §§§ 2, 3, and/or 4, et al.

[2] IFCAA is Illinois Family Court Accountability Advocates, a lawful, volunteer, non-profit organization co-founded in 2005 by Karyn Mehringer and Dr. Mannix and operating under said assumed name for the non-profit organization Dr. Mannix incorporated in 1995 called, In All Our Best Interest.

[3] Diaz v. Gates, 420 F.3d 897 (9th Cir. 2005) countered Grogan v. Platt, 835 F.2d 844 (11th Cir. 1998) and established that former income is not compensable as injury to business or property under section 1964(c), but that latter income as economic harm is actionable. However, in this district, Evans v. City of Chicago, 434 F.3d 916 (7th Cir. 2006) established that "claims of loss of earnings due to the inability to seek out or obtain employment constitute pecuniary losses stemming from personal injury" and lack standing under RICO. Dr. Mannix will establish that **intentional impoverishment** through calculated and malicious damage to reputation and career

taxpayer and interstate commerce multiplied by fifty states is staggering.[4]  The harm to society

and to the children of our nation is beyond measure.

23. Dr. Mannix quotes from the written draft of her invited speech for the August 18, 2007

Family Preservation Day Rally at the foot of the Lincoln Memorial in Washington, D.C. found at

www.dcrally2007.com:

> **Like many of you, all the IFCAA co-members did was naively seek protection and
> relief from the court and then lawfully stand up to the crimes being committed**

and through protracted abuse of process involving extortion with "wrongful use of actual or
threatened force, violence, or fear" and "under color of official right" such that the victim of
RICO lacks the financial ability to lawfully fight back in and of itself evidences the RICO
predicates 18 U.S.C. §§ 1512 and 1513 in the pattern of racketeering activity to accomplish the
ends of the family court racket. **This is especially heinous because the involved public
officials are no different than traditional gangsters and their thugs about which Congress
created RICO law because they use the knowledge that threatening to take a child and/or
carrying out the threat result in profound and irreparable harm to the victim of their
financial injury.** Suffice to say, in Def. Galatzer-Levy's amicus brief submitted in a DCFS case,
he stated in pertinent part: "Intense distress about separation from children has strong biological
roots and is part of our biological endowment based in brain and hormonal functions.  The class
of animals to which humans belong, the mammals, characteristically suckle their young and
provide for and protect their young until the young are almost physically mature.  Mammalian
mothers, especially mothers in that order of mammals called primates, to which humans belong,
have been shown to undergo changes in brain hormonal function … In sum, the threat of taking
a child from a parent's care is profoundly coercive because it activates deeply rooted
psychological and biological processes developed to maintain close attachment to the child
because such a threat can be experienced as a danger at least equivalent in intensity of serious
bodily harm.  Parents entering into safety plan agreements with DCFS do so under a state of
extreme coercion."

Moreover, many victims of family court rackets ultimately end up on welfare on the taxpayers'
tab while the perpetrators enjoy their vacation properties in Arizona. See **Exhibit F** for a partial
transcript of an applicable exchange with Judge Donegan and Def. Asher on August 19, 2005.
Only two months later, Judge Donegan judicially kidnapped Dr. Mannix's children after losing
all authority and jurisdiction to enter orders in the case in conspiracy with Defs. Wessel, Asher,
Bush, Bruno, Sheetz, Shields, Jacobius, Geiger, and M. Waller.  Four days after the kidnapping
of her sons, while Dr. Mannix was hospitalized with dehydration, Def. Asher called her and
harassed her while she was lying on a hospital bed with an I.V. of saline in her arm.  Then Judge
Donegan and Def. Asher discussed the possible value of her two remaining pieces of real estate
purchased the Peace School she was founding.  See **Exhibit G** for partial transcript of 11/04/05.

[4] Dr. Mannix is preparing to complete for submission under seal a formal complaint under *qui
tam*, 31 U.S.C. Sections 3729-33.

against our children and ourselves by the public officials who have taken positions in the public trust and signed employment contracts funded by taxpayers dollars and who have taken Oaths of Office to uphold the US and state Constitutions.

Now, like so many of you, we are exemplary parents, professionals, and citizens, who have been defamed and criminalized for solely lawfully exercising our constitutional rights, and now IFCAA co-members have apparently been labeled as alleged domestic "terrorists" for it.

How can this be?

This staggering reality exists because there are two distinct types of organized crime that have infiltrated our government and resulted in widespread public corruption. One is systemic organized crime which is implemented and executed by specific actors in well-defined patterns of practice to exact the irreparable harms against our children and ourselves by corrupt public officials as addressed in Dr. Brown's and Dr. Moore's presentations.

My presentation is about the other type of organized crime, specifically, organized crime families' infiltration of our government resulting in widespread public corruption.

Our nation's history is replete with the reality that organized crime families have had unlawful influence on public officials. It is well established that organized crime families can only function with the cooperation of corrupt public officials, whether that public official is the local head of a political party, an alderman, a police commissioner or a higher ranking public official.

However, organized crime families have historically engaged in illicit enterprises involving adults, for example, gambling and prostitution. The well-known movie series, The Godfather, dramatized the conflict within the mob expanding the illicit moneymaking enterprises into drug trafficking because of the danger it posed to children. So, even organized crime families historically held sacred the "family" on some level. But evidence now verifies that a new generation of organized crime families realized how lucrative child trafficking could be with the aid of corrupt elements in the US judicial system and other branches of government as well as directly through stealing government funds by virtue of a sophisticated system of identity theft and hacking into the INSLAW government software program called PROMIS. The Operation Family Secrets mob trial currently underway in Chicago exemplifies my point. Family is no longer sacred to organized crime families and today the nation's children are literally a marketable commodity accessed through our nation's judicial system.

## C. Seventh Circuit Case Law from Operations Greylord and Gambat and the Prosecution of Ex-Governor George Ryan

24. The successful federal investigations, indictments, prosecutions, and convictions of

multiple State of Illinois public officials, including multiple Circuit Court of Cook County ex-

judges and ex-governor Ryan under 18 U.S.C. §§ 1961-1968 has created ample case law <u>in this</u>

<u>federal district court</u> to support the merits of the instant civil RICO Act complaint.[5]

25. <u>U.S. v. Warner and Ryan</u>, 498 F.3d 666 (7th Cir. 2007), stated in pertinent part:

[S]ee also James Morrison Mecone, et al., Racketeer Influenced and Corrupt
Organizations, 43 Am. Crim. L. Rev. 869, 881 (2006) ("When the enterprise under
consideration is a legal entity, the enterprise element is satisfied by the mere proof that
the entity does in fact have a legal existence."). We conclude, therefore, that the district
court did not err when it accurately informed the jury that the State of Illinois is a legal
entity.

26. <u>US v Murphy</u>, 768 F.2d 1518 (7th Cir. 1985), stated in pertinent part:

The outcome. The jury convicted Murphy on 24 of the 27 counts in the indictment. The
counts involved four legal theories. Some counts charged violations of the mail fraud
statute, 18 U.S.C. § 1341. The checks constituting the CBRs were mailed to the attorneys,
and each mail fraud count was based on the mailing of one CBR. **The "fraud" was one
committed \*1528 by Murphy on the people of Cook County, who lost his honest
services.** Some counts were based on the Hobbs Act, 18 U.S.C. § 1951(a), which
prohibits extortion affecting interstate commerce. **The extortion lay in the solicitation
and receipt of the bribes.** Some counts were based on the theory that Murphy **aided and
abetted others who violated the Hobbs Act**. The remaining count was based on the
Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(d), which
prohibits the operation of an "enterprise" in interstate commerce through a "pattern" (two
or more events) of "racketeering" (the violation of specified state or federal laws). **The
"enterprise" here was the Cook County Circuit Court**...

3. The Hobbs Act requires proof of an effect on interstate commerce. The indictment
alleged, and the evidence showed, that the bribes paid to Murphy "**depleted the assets**"
of the lawyers who paid them, and that the lawyers regularly purchased items in interstate
commerce. The proof at trial showed, for example, that Arthur Cirignani's law firm
regularly purchased law books from out of state. Terrence Hake purchased envelopes and

[5] Dr. Mannix contends that she and her fellow Americans are being unconstitutionally and fatally
prejudiced. Specifically, the existence of a criminal judicial bribery scheme in the Circuit Court
of Cook County has been established by the First District Appellate Court, but Dr. Mannix is
being forced to proceed unrepresented in an oppressively complicated civil RICO complaint with
a staggering number of defendants versus this district's US Attorney Patrick Fitzgerald initiating
simpler, separate criminal RICO prosecutions, with a small number of defendants each case, as
depicted in **Exhibit B** regarding Operation Gambat.

stationery from New York. This and other evidence showed a regular connection between the lawyers and interstate commerce. Cf. Goldfarb v. Virginia State Bar, 421 U.S. 773, 783-86, 95 S.Ct. 2004, 2011-13, 44 L.Ed.2d 572 (1975). **The evidence is thin, and as an original matter we might be inclined to doubt that the "depletion" of the lawyers' assets had much effect on commerce.** The commerce power of Congress is sweeping, however, and this court has held that Congress meant to exercise*1531 that power to the limit. United States v. Staszcuk, 517 F.2d 53, 58-59 (7th Cir.) (en banc), cert. denied, 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975). **The statute reaches those who affect commerce "in any degree," and in a complex economy almost any movement of funds affects commerce to some degree.**

4. It is easier to establish the commerce element of the RICO count. Only the "enterprise" need affect commerce. United States v. Dickens, 695 F.2d 765, 781 (3d Cir.), cert. denied, 460 U.S. 1092, 103 S.Ct. 1792, 76 L.Ed.2d 359 (1983). Cf. United States v. McManigal, 708 F.2d 276, 283 (7th Cir.), vacated on other grounds, 464 U.S. 979, 104 S.Ct. 419, 78 L.Ed.2d 355 (1983) (**sufficient if the clients of the enterprise "do interstate business"**). **The "enterprise" here was the Circuit Court of Cook County.** See United States v. Lee Stoller Enterprises, Inc., 652 F.2d 1313 (7th Cir.) (en banc), cert. denied, 454 U.S. 1082, 102 S.Ct. 636, 70 L.Ed.2d 615 (1981) (**a county sheriff's office may be an enterprise under RICO**). Without question the evidence showed that the Circuit Court affected commerce-in what it bought in order to operate, in its effect on the lawyers and litigants who appeared before it. If the enterprise of being a real estate broker affects commerce because clients may move from state to state, see McLain v. Real Estate Board of New Orleans, Inc., 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980), then the enterprise of being a large metropolitan court does so. (Emphasis added.)

## D.  First District Appellate Court Finding of a "Bribery Scheme"

27. On October 13, 2006, Dr. Mannix gave extended testimony under oath on the stand

regarding local and interstate corruption in and involving individuals associated with the Circuit

Court of Cook County, Chicago, Illinois during an arbitrarily expedited substitution of judge for

cause hearing against state court Judge Alexander White in Cook County Case No. 98 CH

11007, D'Agostino, et al. v. Lynch, et al.  The unrepresented movant and respondent, Michael

Lynch's emergency motion for continuance so that he could bring in his out-of-state witnesses,

including "Informant X," with protections in place due to the alleged organized crime

involvement **was denied**. The substitution of judge motion was denied. Mr. Lynch was held in

direct criminal contempt of court and was immediately incarcerated.  [See incorporated Lake

County Recorder's Office Document No. 6324306 in USDC Case No. 08 C 1883; Exhibit F attached to emergency application for TRO and preliminary injunction filed April 2, 2008.]

28. One could argue with confidence that Mr. Lynch was falsely incarcerated for failing to substantiate his allegations which the judge **directly prevented** him from doing when she denied his emergency motion for continuance. Shortly before the judge ended the hearing, a pure trust document was placed on the witness stand before Dr. Mannix which is allegedly associated with the judge's husband and was obtained from "Informant X" over the lunch hour. [See Lake County Recorder's Office Document No. 6324306, PR050.] The judge quit the bench shortly after falsely incarcerating Mr. Lynch. But before quitting the bench, she denied reputable criminal attorney, Thomas Decker's motion to reconsider the incarceration order and she denied Mr. Lynch's appellate attorney, Thomas A. Durkin's (Assistant US Attorney, Northern District of Illinois, 1978-1984) motion for stay pending appeal. Mr. Durkin obtained a stay of the incarceration order on October 26, 2006 in the appellate court.

29. On April 2, 2008, the First District Appellate Court in Chicago, Illinois issued a corrected opinion which, again, stated in pertinent part, "Dr. Sheila Mannix of the IFCAA assisted Lynch in bringing charges and filing complaints against the corrupt judges. Although Mannix did not provide Lynch with information regarding Judge White,[6] she **produced direct evidence** regarding several other judges' involvement in the bribery scheme." [D'Agostino v. Lynch, 382 Ill. App. 3d 960, 887 N.E.2d 590, 320 Ill. Dec. 446. Emphasis added.]

---

[6] October 13, 2006, Certified Report of Proceedings, Page 71, Lines 14-19:

| | |
|---|---|
| The Court | I'm just asking you if you have anything to back up the allegations you've made against Judge White? |
| Dr. Mannix | Yes, I do, but I'm not at liberty to say. |
| The Court | Thank you. |

See **Exhibit H** for partial transcript of further testimony by Dr. Mannix.

30. **Nonsensically**, despite acknowledging judicial corruption and despite Dr. Mannix's repeated statements that she had evidence regarding Judge White but that she was "anxious about the security of people," [Page 65, Lines 15-16], the appellate court upheld the incarceration order against Mr. Lynch.

31. On September 24, 2008, the Illinois Supreme Court denied Mr. Lynch's Petition for Leave to Appeal prepared by Mr. Durkin. The judicial bribery scheme ruling stands unopposed.

32. That Dr. Mannix has the affidavit of "Informant X" executed in Maricopa County, Arizona on December 20, 2006, entitled, "First Affidavit of [name deleted herein] in Support of Michael W. Lynch's Allegations and Request for a Criminal Investigation of State and Federal Trial, Bankruptcy, and Reviewing Courts in Chicago, Illinois [RE: 10-11-06 Affidavit of Lynch & 10-13-06 Testimony of Lynch]."

33. That Dr. Mannix has previously filed for TRO and preliminary injunction on April 2, 2008 and will seek an order from this Court regarding a motion for a **protection order** for her family and IFCAA co-members. Further, Dr. Mannix will seek protection for all affiants below as permitted under federal law. Dr. Mannix will file a motion for leave to file **under seal** the above-referenced affidavit of "Informant X" as well as other affidavits of individuals who are direct witnesses, victims, and/or informants of alleged federal crimes by public officials including high ranking public officials, directly and indirectly connected to the instant complaint and/or including organized crime involvement in the nation's family courts, which affiants are at imminent risk of retaliatory, irreparable harm.

34. Note that Mr. Lynch's life was not only in danger while falsely incarcerated (**Exhibit I**), his life was threatened by an involved party in a court hall of the Daley Center after he was released. Said threat was witnessed. Uncorrected Report of Proceedings in USDC, Northern

District of Illinois, Eastern Division, Case No. 08 C 1883, before the Honorable Milton I.

Shadur, at Page22, Line 13-24, states in pertinent part: "Dr. Mannix: *Sir, I just want to ask you,*

*you do understand what I'm up against, don't you.* Judge Shadur: *Well -* - Dr. Mannix: *You do*

*understand what's going on here?* Judge Shadur: *Well, you know I don't want to - - I want to*

*refrain from making any comment either way -* - Dr. Mannix: *Okay. I understand your position.*

Judge Shadur: *- - about the substance of your claim. That's basically for you to assert and for*

*you to prove once you've asserted it. So I'm not making any statement either favorable or*

*adverse about that.* "

35. The Seventh Circuit Court of Appeals held that the Circuit Court of Cook County

is a criminal enterprise. U.S. v. Murphy, 768 F.2d 1518, 1531 (7th Cir. 1985). The United States

Supreme Court acknowledged the judicial corruption in Cook County when it stated that Judge

"Maloney was one of many dishonest judges exposed and convicted through 'Operation

Greylord', a labyrinthine federal investigation of judicial corruption in Chicago". Bracey v.

Gramley, 519 U.S. 1074, 117 S.Ct. 726 (1997). There has been no finding that the Circuit Court

of Cook County is no longer a criminal enterprise, nor that judicial corruption no longer exists in

Chicago. Since judges who do not report the criminal activities of other judges become

principals in the criminal activity under 18 U.S.C. §§§ 2, 3 & 4 and since no judges have

reported the criminal activity of the judges who have committed criminal activity, the other

judges are as guilty as the judges who have committed criminal activity. The U.S. Supreme

Court, in Scheuer v. Rhodes, 416 U.S. 232, 94 S. Ct. 1683, 1687 (1974), stated that "when a state

officer acts under a state law in a manner violative of the Federal Constitution, he comes into

conflict with the superior authority of that Constitution, and he is in that case stripped of his

official or representative character and is subjected in his person to the consequences of his

24

individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States." [Emphasis supplied in original] Under Federal law which is applicable to all states, the U.S. Supreme Court stated that if a court is "without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void; and form no bar to a recovery sought, even prior to a reversal in opposition to them. They constitute no justification; and all persons concerned in executing such judgments or sentences, are considered, in law, as trespassers." Elliot v. Piersol, 1 Pet. 328, 340, 26 U.S. 328, 340 (1828).

36.     Dr. Mannix is under information and belief that it has been established by the aforementioned April 2, 2008 First District Appellate Court opinion that **the criminal activities that the Federal Courts found in the Circuit Court of Cook County still exist and that the Circuit Court of Cook County remains a criminal enterprise.**

37. Said judges involved "in the bribery scheme" include the defendant-judges herein who were and/or are involved [18 U.S.C. §§ 2, 3 & 4] in the pattern of racketeering activity in Dr. Mannix's post-divorce proceedings in the Circuit Court of Cook County Case No. 93 D 2984, et al. The divorce judgment was entered in March 1993. The post-divorce proceedings were initiated by Dr. Mannix in May 2000 to seek protection and relief for her children and herself from her ex-husband's domestic violence including but not limited to the constant threat of physical violence, harassment, intimidation, ongoing mental, emotional, and psychological battering, and beginning with the ongoing economic abuse component of domestic violence. [From USDC, Northern District of Illinois, Eastern Division, Case No. 08 C 1883, before the Honorable Milton I. Shadur, uncorrected Report of Proceedings, April 18, 2008, Page 9, Line 24 to Page 10, Line 10, Dr. Mannix stated in pertinent part: "*When I came to the state court in 2000, having been divorced in 1993, the issue was domestic violence.* [The Court: Okay.] *And a*

*component of domestic violence, as I am sure you are aware, because there is physical assault in*
*violence, there is mental, emotional, psychological torture and trauma. And there is economic*
*violence, Gandhi said paraphrasing, the most severe form of violence is poverty. And that*
*educated people have written books that a component of domestic violence is economic abuse.*
*That can be more devastating than a physical assault as Gandhi had taught."]*

38. Further stating, in USDC Case No. 08 C 1883, before Judge Shadur, uncorrected Report
of Proceedings, April 18, 2008, Page 10, Line 11 to Page 11, Line 1, Dr. Mannix stated in
pertinent part: *"When I came in 2000, the court gave me due process. I had an excellent*
*attorney. And when it came time for the trial the Judge awarded me a $30,000 arrears award*
*for my ex-husband not obeying the divorce decree, and increased child support a little bit. The*
*domestic violence escalated aggressively, but now including the children being targeted. Within*
*seven months a vexatious full custody suit was filed. Within three months, on April 23, 2002, an*
*emergency intervention was ordered. All members of the family were interviewed. And the*
*emergency intervenor at the Cook County court came back and said, "The respondent is abusing*
*the children." And my ex-husband('s attorney, Michael Pechnick) said, "Your Honor, should I*
*withdraw the sole custody suit?" And my own attorney, Sandra Nye, said that won't be*
*necessary." That was the beginning of a federal RICO Act - - federal question RICO action. And*
*I will tell you the motive and intent."*

39. That the above-referenced defendant-judges in conspiracy with the defendant-attorneys
and defendant-court-appointed state court agents erroneously believed Dr. Mannix to be the
heiress of the Rand McNally map company fortune as a result of their confabulation involving a
spin-off of her predecessors' Sperry Gyroscope Company, namely, Sperry Rand Corporation,
and the unrelated company, Rand McNally. Said confabulation provided the motive and intent

26

of said judges and other state court agents acting in conspiracy with each other, Dr. Mannix's ex-husband, and those acting on their behalf to engage in acts in violation of federal RICO law. <u>As a direct result of multiple rounds of escalating, well-coordinated predicate acts by the defendants and wrongdoers in the pattern of racketeering activity,</u> Dr. Mannix has directly lost in excess of **$1,000,000** in lost assets, income, and personal and business investments, including real estate, retirement account funds, College Illinois funds, and whole life insurance policies for which Dr. Mannix's two children were the beneficiaries.

40. Dr. Mannix quotes from the United Stated Department of Justice, United States Attorneys' Manual, Title 9: Criminal Resource Manual: 2404 Hobbs Act -- Under Color of Official Right, which states in pertinent part:

> **"In addition to the "wrongful use of actual or threatened force, violence, or fear," the Hobbs Act (18 U.S.C. § 1951) defines extortion in terms of "the obtaining of property from another, with his consent . . . under color of official right." In fact, the under color of official right aspect of the Hobbs Act derives from the common law meaning of extortion. As the Supreme Court explained in a recent opinion regarding the Hobbs Act, "[a]t common law, extortion was an offense committed by a public official who took 'by color of his office' money that was not due to him for the performance of his official duties. . . . Extortion by the public official was the rough equivalent of what we would now describe as 'taking a bribe.'"** *Evans v. United States*, **504 U.S. 255 (1992)."**

## E. Illinois Family Court Accountability Advocates

41. Regarding the aforementioned First District Appellate Court opinion, the appellant, Michael Lynch, is a co-member of the lawful, volunteer, non-profit organization, Illinois Family Court Accountability Advocates (IFCAA). IFCAA was created to stop the avarice-driven corruption in Illinois' family courts that is hurting the innocent children of domestic violence and/or divorcing and divorced parents. Dr. Mannix, a PhD-level licensed Clinical Psychologist and trained research neuroscientist, and Karyn Mehringer, a Licensed Professional Counselor with a MA in forensic psychology, co-founded IFCAA in June 2005 after they were interviewed

27

by an FBI-Chicago Special Agent regarding the criminal acts being committed against them and their children by corrupt public officials in the family court located at the Richard J. Daley Center in downtown Chicago. These acts include extortion, bribery, fraud, coercion under duress, perjury, subornation of perjury, intimidation, disorderly conduct, obstructing justice, tampering with, harassment of, retaliation against, and defamation against witnesses including child witnesses.

42. Given their higher educations in psychology, Dr. Mannix's and Ms. Mehringer's partnership made perfect sense because one could argue with confidence that only sociopathic individuals who have chosen careers in the public trust which require Oaths of Office to uphold the Illinois and U.S Constitutions and require obedience to professional and ethical codes of conduct would maliciously engage in corruption that targets the exploitation of innocent children and targets damage to the children's innocent parents' properties and businesses for said individuals' personal financial gain in a racketeering enterprise operating in a family court within a state government.

43. Further, in light of Def. Madigan's December 12, 2008 motion to the "wrongdoer," the Illinois Supreme Court, against the "wrongdoer," Illinois Governor Blagojevich, alleging lack of fitness, Dr. Mannix quotes from her Appellant's Brief filed on October 3, 2008 and currently before the Second District Appellate Court in Case No. 2-08-0574. This case is IFCAA co-founder's Mannix and Mehringer's **defamation action** against Def. Shields [Lake County Case No. 07 L 646, McKoski], for which ex-judge Def. Shields is receiving representation from Def. Madigan over the objection of Dr. Mannix. Note that Def. Shields' alleged acts of defamation *per se* were initiated, after hours, on **August 16, 2006** and resulted in Dr. Mannix and Ms. Mehringer's personal information being released in an Intelligence Bulletin [**Exhibit J**] and

28

turned over to the <u>Illinois Statewide Terrorism Intelligence Agency</u> on August 17, 2006, which

was **less than two months after** IFCAA's first national press release of **June 19, 2006** attached

as **Exhibit K** and entitled: "**IFCAA, Chicago Grassroots Organization, Fighting**

**Racketeering Enterprise in Family Court Alleges Illinois Attorney General Lisa Madigan**

**Spending Tax Payer Dollars to Defend Judicial Corruption:**"

> "b. <u>The Trial Court erred when (a.) it made an unconstitutional finding in opposition</u>
> <u>to public policy and the public interest, and (b.) it made a finding prejudicial to the</u>
> <u>administration of justice</u>
>
> No one is above the law. Just like judges and attorneys, Mannix, who is a state
> licensed clinical psychologist, is required by her ethical code to act in the public
> interest. Before becoming a witness, victim, and informant of verified public
> corruption, Mannix had completed her trademarked curriculum for the school she is
> founding, the Montessori Peace School, and had initiated her research on the
> sociopathic behaviors of illegitimate authority. Her focus was political figures based
> on Lens Seven: The Political/Economic/Social Interface of the Tools*for*2k. ®
> [C000230-237] Now her focus is the judges, attorneys, and court-appointed
> professionals involved in racketeering enterprises in the nation's state and federal trial
> and reviewing courts. Mannix is working with another victim and witness of the
> judicial "bribery scheme" in Cook County, a medical physician, who is also a co-
> member of the organization Mannx and Mehringer co-founded, Illinois Family Court
> Accountability Advocates, to obtain a grant to publish the research.
>
> Briefly, it is common knowledge that individuals evaluated and diagnosed with
> narcissistic personality disorder with sociopathic features believe that they are above
> the law. Mannix's research indicates that the observable behaviors of state court
> agents who act with impunity when committing racketeering predicates in a pattern of
> racketeering activity are similar to the observable behaviors of individuals who have
> been diagnosed with narcissism with sociopathic features including pathological lying
> and lack of social conscience, especially given undeniable acts that destroy children
> for personal financial gain.
>
> In the plaintiffs' reconsideration motion, they argued that "There is no public policy
> to protect a judge from liability for non-judicial acts. See <u>Richman v. Sheahan</u>, 512
> F. 3d 876, 879 (7th Cir. 2008), "We ruled the first time that the defendants [deputy
> sheriffs] were not entitled to the absolute immunity from tort suits that judges enjoy,
> merely because they committed the alleged torts in the course of carrying out the
> judge's orders to remove the plaintiff's son from the courtroom. 270 F.3d 430 (7th
> Cir. 2001). The judge did not order them to commit a tort, and even if he had done
> so, to clothe them with judicial immunity would be as absurd as ruling that the judge

would have been immune from liability had he brained the plaintiff's son with his gavel." (emphasis added)" [C000566-567]" [**Opinion of Justice Posner**]...

Plaintiffs argue with confidence that the defendant did not submit an affidavit because the plaintiffs can prove that any such affidavit would have been fraudulent, which allegation was established by the three affidavits the unrepresented plaintiffs were forced to submit in support of their reconsideration motion. The acts of Judge Shields on August 17, 2006 had nothing whatsoever to do with acts taken in her judicial capacity. Her pre-meditated malicious acts of 8/17/06 initiated on August 16, 2006 after hours, were the acts of a desperate woman scrambling to cover-up her illicit acts that were <u>lawfully</u> going to be exposed the following day...

Ultimately, it is beyond cavil that the US Constitution is the Supreme Law of the Land and takes precedence over the erroneous misapplication of the doctrine of judicial immunity in the circuit court's opinion. Ultimately, it is the mandatory civil and moral duty of all American citizens to uphold the US Constitution no matter who is desecrating it; No matter what the cost to oneself to hold the spiritually-based principles of our great constitution above personal interests. What could pose a greater clear and present danger to the administration of justice than judges putting themselves and other judges above the law in light of the list of criminal convictions of sitting state and federal trial and reviewing court judges entered into the record at C000616 through C000628?" (See **Exhibit L**)

## FEDERAL RICO ACT CLAIMS

44. Dr. Mannix, <u>as an indigent, unrepresented, non-attorney litigant who is seeking representation from the Court as well as from the United States Attorneys' Offices in Chicago and in Washington, D.C.</u>, is well aware that she cannot possibly create documents like a trained attorney, therefore she cites supporting authorities which acknowledge this fact and ruled that *pro se* pleadings are to be considered without undue focus on technicality, but rather **focus on substance** and **the just adjudication of the matter before the court**; pro se litigants pleadings are not to be held to the same high standards of perfection as lawyers. [Haines v. Kerner, 92 S.Ct. 594; Jenkins v. McKeithen, 395 US 411, 421 (1969); Picking v. Penna. Rwy. Co. 151 F.2d 240; Puckett v. Cox, 456 F.2d 233; Hughes v. Rowe, et. al. (1980), 101 S. Ct. 173]

45. Dr. Mannix will be seeking to file a First Amended Complaint with the assistance of court-appointed counsel.

46. Further stating, on April 18, 2008, under USDC Case No. 08 C 1883 filed on April 2, 2008, Dr. Mannix appeared before Judge Shadur regarding her motion to reconsider his ruling on April 3, 2008 to dismiss her emergency request for temporary restraining order and preliminary injunction while she filed, within 90 days, her civil RICO action against Sheetz and the state court agents in her Cook County case about whom she filed a motion to amend in as defendants. Judge Shadur found that **until** Dr. Mannix has filed a proper civil RICO action, he did not have jurisdiction **to consider** an action to stay the state court proceedings. On the 18th, Judge Shadur provided Dr. Mannix with a copy of a Pennsylvania US District Court judge's "RICO checklist" attached hereto as **Exhibit A**. . [Judge Shadur, April 18, 2008 Report of Proceedings, USDC Case No. 08 C 1883, Page 19, Line 23 to Page 20, Line 6, *"But the way to get into the courthouse door for that purpose is the actual filing - - the preparation and filing - -of a civil RICO Complaint. And it's for that reason that I had this prepared for you, because as I say those who have not been familiar with what is a very complex statute, have found it useful, because it says, "State this and state that, and here are the questions you have to answer."*]

47. Dr. Mannix makes her first attempt to present herein her claims under 18 U.S.C. §§ 1961-1968 [1] in the form detailed in the Pennsylvania US District Court judge's "RICO checklist" provided to her by Judge Shadur and included as Exhibit A and [2] as detailed in the reputable annotated text, ***Manual for Complex Litigation***, Fourth, § 35: Civil RICO, p. 689-723, which text Dr. Mannix discovered includes the template of said checklist at §40.54: Civil RICO Case-Statement Order.

48. Due to the inherent complex nature of this civil RICO Act complaint, which involves multiple defendants, multiple claims, and multiple rounds of escalating criminal acts in the verified judicial bribery scheme over a six-year period to date (2002 through 2008 and

31

continuing), Dr. Mannix has **attempted** to create a concise, organized presentation with the use

of tables and graphs, which are found in the appendices. Please note that Dr. Mannix can call at

jury trial many victim-witnesses of the same RICO Act crimes in the Circuit Courts of Cook

County, Lake County, McHenry County, DuPage County, Will County, and Kane County, many

of whom are co-members of IFCAA and many of whom are not. Dr. Mannix can also call as

witnesses victims of similar family court rackets operating in other states. IFCAA decided that

trying to file a class action RICO would be too complicated for unrepresented, non-attorney

litigants, so **a series of individual complaints are being prepared**. Quoting from *Manual for*

*Complex Litigation*, Fourth, § 35: Civil RICO, p. 691:

> RICO has been called "arcane," tormented," "complicated," and "agonizingly difficult."
> Litigation under the statute is often time-consuming and burdensome, both because
> RICO's inadequately defined scope has resulted in conflicting legal doctrine and because
> of the breadth of the supporting allegations. RICO litigation can involve multiple
> defendants and multiple count complaints where each count alleges a separate enterprise
> and a multitude of predicate acts. In addition, RICO cases are often brought as class
> actions, which can introduce additional complexities.

49. Dr. Mannix incorporates herein by reference in entirety (1) the Record of USDC Case

No. 08 C 1883 [Shadur, Kennelly], (2) the Record of USDC Case No. 05 C 7232 [Gettleman,

Coar, Kendal], (3) the Record of USDC Case No. 07 C 3561 [Darrah, St. Eve], (4) the Record of

the Seventh Circuit Consolidated Appeal Case Nos. 06-1257, 06-1272 and 06-1281, (5) the

Record of the Seventh Circuit Consolidated Appeal Nos. 06-2120, 06-2369 & 06-2435, and (6)

the Record of the US Supreme Court Case No. 07-7330. All of the records of these federal cases

**include material evidence** from the state court record that resulted in the aforementioned First

District Appellate Court opinion, "[Dr. Mannix] **produced direct evidence** regarding several

other judges' involvement in the **bribery scheme**." [D'Agostino v. Lynch, 382 Ill. App. 3d 960,

887 N.E.2d 590, 320 Ill. Dec. 446. Emphasis added.]

50. Dr. Mannix incorporates herein by reference the certified Report of Proceedings of October 13, 2006 in Cook County Case No. 98 CH 11007, D'Agostino, et al. v. Lynch, et al.

51. Dr. Mannix incorporates herein by reference <u>Lake County Recorder's Office Document No. 6324306</u>, which is Dr. Mannix's unopposed affidavit filed March 27, 2008 regarding direct evidence that led to the judicial bribery scheme ruling and including documents obtained from organized crime family informant. Said document is in the record of USDC Case No. 08 C 1883 as well as multiple state circuit and appellate court records.

52. Dr. Mannix incorporates herein by reference <u>Cook County Recorder's Office</u> Document Nos. 0624443295 and 0823326194, which are Federal Tax Liens against Defendant Sheetz **totaling $111,310** for the years 2000, 2001, 2002, 2003, 2004 and 2005.

53. Dr. Mannix incorporates herein by reference her **"Formal Complaint for Suspension, Removal and/or Impeachment Proceedings Under Quo Warranto and Application for Declaratory Judgment Against the Honorable Thaddeus Machnik, Raul Vega, James Donegan, and Karen Shields (Pursuant to 735 ILCS 5/Article XVIII *Quo Warranto*),"** which was served upon Def. Madigan, Illinois Attorney General, Def. Devine through Patrick Driscoll, Chief Civil Actions Bureau, Cook County State's Attorney's Office, and wrongdoer, the Illinois Supreme Court though the Clerk's Office in Chicago on January 5, 2006. It is also in the record of USDC Case No. 05 C 7232.

54. Dr. Mannix incorporates herein by reference the entirety of the records of (1) her family's case now known as Cook County Case No. 93 D 2984 (Machnik, Vega, Donegan, Shields, Hamilton, Jacobius, Cleveland-Bernstein, Mathein, Martin, Brewer), Lake County Case No. 05 OP 1348 (Geiger), Lake County Case No. 05 OP 1415 (Gieger), Lake County Case No. 07 OP 143 (Waldeck, Ortiz), Cook County Case No. 06 OP 2465 [formerly Lake County Case

No. 06 OP 97 (Winter, Meyer, Jacobius, Donegan)] Consolidated with Cook County Case No.

06 OP 3-0185 (Sullivan, Donegan, Jacobius), Cook County Case No. 07 OP 1949 [formerly

Lake County Case No. 07 OP 30 (Hughes, Waldeck, Ortiz, Jacobius, Savage, Pucinski, Kelley)],

Cook County Case No. 07 OP 6329 [formerly Lake County Case No. 07 OP 1512 (Waller, Hall)]

as well as (2) the separate Paternity Act case, Cook County Case No. 06 D 80685 [formerly Lake

County Case No. 06 F 43 (Winter, Waites)], (3) Cook County Case No. 06 CH 10002

(emergency habeas corpus and injunction – Arnold, Kinnaird, Henry, Bush), (4) Cook County

Case No. 06 CH 9307 (mandamus – Arnold, Kinnaird, Billik), (5) Lake County Case Nos. 96 OP

560, 96 CM 3238, 06 OP 118 (Winter), 06 OP 286 (Rozenberg, Winter), 06 OP 1769

(Strickland), 06 D 630 (Fritz, Collins), 04 CH 528 (Hall), 06 CH 1452 (McKoski), 07 L 646 (Hall,

Starck, McKoski), 07 CH 534 (Hoffman), 08 OP 1246 (Berrones), (6) Cook County Case No. 08

OP 3-0457 (Betar), (7) Cook County Case Nos. 04-M1-129822 [$4,669.48 judgment against

Def. Sheetz for breach of contract, Husby] and 06-M3-003104 [$2,075.00 judgment against Def.

Sheetz for breach of contract, Rempert, with body attachment and bond ordered 10/31/08], (8)

McHenry County Case Nos. 06 CH 118 (Caldwell), 06 CH 389 (Caldwell),  08 DV 330

(Mangiamele), and 08 OP 499 (Mangiamele, Wilbrandt, Zopp), (9) First District Appellate Court

Case Nos. 1-06-2130 (Donegan), 1-06-874 (Donegan), 1-06-1176 (Donegan), 1-07-381

(Donegan), 1-07-573 (Donegan), 1-07-1035 (Hamilton), 1-07-1150 (Hamilton), 1-07-1520

(Jacobius)  (10) Second District Appellate Case Nos. 2-05-0923 (Hall), 2-06-0650 (Waites), 2-

08-0574 (McKoski), 2-08-0369 (Waller) and 2-08-0263 (Waller), (11) Illinois Supreme Court

Case Nos. 102778 (Donegan) and 105344 (Jacobius), and (12) US Supreme Court Case No. 06-

9366 (Donegan).

55. Please see **Appendix A: RICO Act Claims** for Dr. Mannix's first attempt to present her RICO Act claims incorporated herein in entirety. The tabular presentation incorporates her answers to several of the "RICO checklist" questions and includes the following data: (1) dates (times and places for mail and wire fraud); (2) predicate acts; (3) state and federal statutes; (4) participants; and (5) facts surrounding predicate acts with particularity regarding mail and wire fraud. The claims herein are not exhaustive as Dr. Mannix will seek to file an amended complaint with the assistance of court-appointed counsel which will be more exhaustive. Dr. Mannix contends that court-supervised discovery will reveal more defendants and more claims and she admits she does not know whether they can get incorporated after discovery.

56. Below please find answers to the questions of the aforementioned "RICO checklist," which questions are underlined and delineated by the item numbers and letters that correspond with the checklist, again, found as Exhibit A:

1. State whether the alleged unlawful conduct is in violation of 18 U.S.C. §§ 1962 (a), (b), (c), and/or (d). The alleged unlawful conduct is in violation of 18 U.S.C. § 1962 (c) and (d).

2. List each defendant and state the alleged misconduct and basis of liability of each defendant. Please see **Appendix B: Question 2**: Defendants, alleged misconduct, and basis of liability for a tabular answer to RICO Checklist Question 2. Regarding the basis liability, there is a unique aspect to the defendants in this case who are public officials which establishes "control" as opposed to "gangsters" as in the initial RICO actions after Congress created the RICO Act. Judges, who are required to be licensed attorneys, and attorneys (including judges and attorneys in **administrative positions**) and licensed mental health professionals are required by their professional codes of conduct to police

35

their colleagues, thereby establishing "control." Judges' and attorneys' duty is mandated

by law. [US District Court for the Northern District of Illinois, Eastern District opinion

entered November 1, 2005 by Judge Gottschall in Case No. 05 C 0283, Golden and

Golden v. Nadler, Pritikin, Mirabelli, LLC, et al, stated in pertinent part, "The court notes

that Illinois attorneys have an absolute duty to report misconduct of other attorneys. See

Skolnick v. Altheimer & Gray, 191 Ill.2d 214, 226, 730 N.E.2d 4, 246 Ill. Dec. 324

(2000).] Likewise, licensed mental health professionals are ethically required to police

their colleagues and report misconduct, thereby establishing "control." Moreover, law

enforcement personnel associated with the enterprise are required by mandatory fiduciary

employment contracts to uphold the criminal code. Therefore, one could argue with

confidence that the defendants' liability is established by active participation in an

unquestionable role involving direction and control in the "operation or management" of

the affairs of an enterprise in which a pattern of racketeering activity was and is

occurring. Obedience to their fiduciary obligations would prevent the creation and/or

ongoing operation of the racket. The MCL, 4th, § 35: Civil RICO, p. 701-702 states in

pertinent part:

> *Conducting or participating in the affairs of an enterprise.* Section 1962(c)
> prohibits participating in or conducting the affairs of an enterprise through a
> pattern of racketeering activity. The liability for participating in the conduct of
> the enterprise through a pattern of racketeering extends only to those who "play
> some part in directing the enterprise's affairs." The Supreme Court has made it
> clear that the defendant need not be in upper management, nor is liability limited
> only to those with primary responsibility for the affairs of the enterprise. The
> "operation or management" test is not easily satisfied. The courts have held that
> there is a "difference between actual control over an enterprise and association
> with an enterprise in ways hat do not involve control." For example, the
> provision of goods or services, including those by outside professionals such as
> accountants or lawyers, will not, in itself, satisfy the test even though the
> enterprise may benefit in some way. Liability may also extend to lower-level
> employees who play some material role under the direction of upper management,
> although it is unclear whether liability will attach to lower-level employees where

they do not also play some management or "directing" role. The courts have differed in their approach to this issue. Finally, liability can extend to outsiders who are associated with the enterprise and exert control over it (for example, by bribery), or who participate in the operation or management of the enterprise; however, it generally will not extend to outside accountants and counsel who render assistance but no control."

3. List the alleged wrongdoers, other than the defendants listed above, and state the alleged misconduct of each wrongdoer. Please see **Appendix C: Question 3**: Alleged Wrongdoers and alleged misconduct of each for a tabular answer to RICO Checklist Question 3.

4. List the alleged victims and state how each victim was allegedly injured. Please see **Appendix D: Question 4**: Alleged Victims and how each was allegedly injured for the answer to RICO Checklist Question 4.

5. Describe in detail the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim. A description of the pattern of racketeering shall include the following information: (Dr. Mannix does not believe that there exists a "collection of unlawful debts" in this case if she is correct in her understanding that said would involve a gambling racket.)

    a. List the alleged predicate acts and the specific statutes which were allegedly violated; Please see the aforementioned **Appendix A**: RICO Act Claims.

**Claims to include the following and conspiracy to commit same:**

18 U.S.C. §§§ 2, 3, & 4

**State felony crimes and racketeering predicates:**

5/12-6 intimidation
5/26-1(a)(4) disorderly conduct
5/31-4 obstructing justice
5/32-2 perjury
5/32-3 subornation of perjury

5/32-4 communicating with witnesses
5/32-4a harassment of witnesses
5/33-1 bribery
5/33-3 official misconduct

**<u>Federal crimes and racketeering predicates:</u>**

1341 mail fraud
1343 wire fraud
1512 tampering with a witness, victim, or an informant
1513 retaliating against a witness, victim, or an informant
1951 interference with commerce, robbery, or extortion

b. <u>Provide the dates of the predicate acts, the participants in the predicate acts, and a description of the facts surrounding the predicate acts</u>; Please see the aforementioned **<u>Appendix A</u>**: RICO Act Claims.

c. <u>If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Identify the time, place and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made</u>;  Please see the aforementioned **<u>Appendix A</u>**: RICO Act Claims.

d. <u>State whether there has been a criminal conviction for violation of the predicate acts</u>; No.

e. <u>State whether civil litigation has resulted in a judgment in regard to predicate acts</u>; Yes, the D'Agostino v. Lynch judicial "bribery scheme" finding. <u>D'Agostino v. Lynch</u>, 382 Ill. App. 3d 960, 887 N.E.2d 590, 320 Ill. Dec. 446 Also, please see Question 19 below for a pendant matter on appeal.

f. <u>Describe how the predicate acts form a "pattern of racketeering activity."</u>  (1) The predicate acts meet the RICO Act requirements for state and federal crimes which

constitute "racketeering activity." (2) The predicate acts form a "pattern of racketeering activity" (a.) by their relationship to a common, open-ended, criminal plan and (b.) by their continuity over many years that will continue into the foreseeable future if this Court does not help stop it. (3) Moreover, in the common criminal plan, the related and continuous racketeering predicates are part of several, repeated "rounds" of the common scheme which differ in time, in participants, and in the escalating extent and nature of the RICO crimes around the fundamental crime of extortion under color of official right and involving the wrongful use of actual fear, and which "rounds" constitute "a regular way of conducting or participating in the conduct of the alleged and ongoing RICO enterprise," which is operating in legitimate business venues of the State of Illinois and its constitutionally-derived sub-legal entities, which affect interstate commerce.

For example, in the instant case, **because** Dr. Mannix did not "cave in" after the first nor the subsequent rounds, the subsequent rounds became more elaborate, involving more predicate acts against her and her family members, including the targeting of her children, as well as against a Court Watch witness and members of the lawful organization she co-founded, Illinois Family Court Accountability Advocates, and involving more participants, i.e., more judges, more attorneys, more evaluators, and employees of the Cook and Lake County Sheriff's Offices, the Cook and Lake County State's Attorney's Offices, the Illinois Attorney General's Office, local police departments, and state agencies whose jobs are to discipline the perpetrators of rackets in Illinois as well as many other wrongdoers

and also victims who became wrongdoers because they did not have the fortitude to uphold their professional duties and/or to shoulder the threat of ongoing extortion and other racketeering predicates, specifically, three of Dr. Mannix's siblings who (a.) feared the further loss of their inheritance, (b.) have unresolved childhood issues regarding their sister, (c.) have psychopathological issues, and/or (d.) lack the moral character and ethical virtue to stand up to public corruption which targets the exploitation of innocent children for money.

The multiple rounds of the common scheme constituting a pattern of racketeering activity of increasing sophistication are well-established in the court records in Cook, Lake, and McHenry Counties, and including other counties, spanning many years about which Dr. Mannix can produce at trial many victim-witnesses of same. Unbelievably, a book, **All But My Soul, Abuse Beyond Control** (2001) has been published detailing the RICO enterprise perpetrated in Dr. Jeanne King (Blumental)'s case, Case No. 95 D 6150, which involved the same Child Representative as the instant case, Defendant David Wessel, the current Chief Judge of the Circuit Court of Cook County before he became Chief Judge, Defendant Timothy Evans, and the current Presiding Judge of the Domestic Relations Division before he took the helm of the family court, Defendant Moshe Jacobius. Between December 1996 to December 1997, Defendant Shields (in the instant case) was consulted by Dr. King when Ms. Shields was an attorney at Nadler, Pritikin, Mirabelli & Shields, LLP. (And in between her short tenure as a circuit judge from March 1995 to December 1996 and her appointment as an associate judge from December 1997 to her recent

40

"retirement" in November 2008 during which time she presided in the family court despite the Solovy Commission, the Crime Commission and others recommending judicial rotation to counteract judicial corruption.) Defendant Shields did nothing to stop the crimes in Dr. King's case despite acknowledging "something is wrong here" and obtaining permission to "get the perspective of the court-appointed *children's attorney*," Defendant Wessel in the instant case. (p. 180) Multiple Cook County attorneys as well as an evaluator well-known for engaging in the "pattern of racketeering activity" who were involved in Dr. King's case, were and/or are also involved in IFCAA co-members' cases as well as other victim-witnesses' cases. All victim-witnesses are eager to provide testimony <u>backed with court records</u> at trial to help stop the ongoing crimes being committed against innocent children and their innocent parents. See **Appendix E: Question 5**: Presentation of the Pattern of Racketeering Activity for a graphic presentation of the rounds.

Further stating, <u>H.J. Inc. v. NW Bell Tel. Co.</u>, 492 U.S. 229 (1989), at 250-251, states in pertinent part:

> We turn now to the application of our analysis of RICO's pattern requirement. Because respondents prevailed on a motion under Federal Rule of Civil Procedure 12(b)(6), we read the facts alleged in the complaint in the light most favorable to petitioners. And we may only affirm the dismissal of the complaint if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, <u>467 U. S. 69</u>, <u>467 U. S. 73</u> (1984). Petitioners' complaint alleges that, at different times over the course of at least a 6-year period, the noncommissioner respondents gave five members of the MPUC numerous bribes, in several different forms, with the objective -- in which they were allegedly successful -- of causing these commissioners to approve unfair and unreasonable rates for Northwestern Bell. RICO defines bribery as a "racketeering activity," 18 U.S.C. § 1961(1), so petitioners have alleged multiple predicate acts. Under the analysis we have set forth above, and

consistent with the allegations in their complaint, petitioners may be able to prove that the multiple predicates alleged constitute "a pattern of racketeering activity," in that they satisfy the requirements of relationship and continuity. The acts of bribery alleged are said to be related by a common purpose, to influence commissioners in carrying out their duties in order to win approval of unfairly and unreasonably high rates for Northwestern Bell. Furthermore, petitioners claim that the racketeering predicates occurred with some frequency over at least a 6-year period, which may be sufficient to satisfy the continuity requirement. Alternatively, a threat of continuity of racketeering activity might be established at trial by showing that the alleged bribes were a regular way of conducting Northwestern Bell's ongoing business, or a regular way of conducting or participating in the conduct of the alleged and ongoing RICO enterprise, the MPUC. The Court of Appeals thus erred in affirming the District Court's dismissal of petitioners' complaint for failure to plead "a pattern of racketeering activity." The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion. *It is so ordered.*

g. State whether the alleged predicate acts relate to each other as part of a common plan. If so, describe in detail. Yes. The alleged predicate acts relate to ach other as part of a common bribery scheme that utilizes the legitimate conduct of multiple legal entities in the venues provided by the State of Illinois to carry out the extortion of private and government funds.

Ample material evidence of the extortion of private funds has been collected. Research into the absconding of local, county, state, and federal government funds and discovery into same, as well as research and discovery into an organized crime family element pursuant to mob informants, has not been fully completed, in part, because of (a) non-compliance with Freedom of Information Act requests, (b) non-compliance with lawful subpoenas, and (c) the need for federal government protection of informants.

6. Describe in detail the alleged enterprise for each RICO claim. A description of the enterprise shall include the following information:

42

a. State the names of the individuals, partnerships, corporations, associations, or other legal entities, which allegedly constitute the enterprise: The legitimate business enterprise for all the RICO claims herein is the legal entity, the State of Illinois and its constitutionally-derived sub-legal entities, including the circuit courts, attorney general's office, state's attorneys' offices, and county sheriff's offices, et al.

b. Describe the structure, purpose, function and course of conduct of the enterprise: The answer to this question is extensive and can be found on the official website and associated links of the State of Illinois and the official websites and associated links its sub-legal entities. Said public information is incorporated herein by reference. For example, the General Order and Rules of the Circuit Court of Cook County that can be found on the official website details the normal procedures of dissolution of marriage and post-judgment proceedings.

   Further, the Secretary of State regularly publishes a book entitled, "ILLINOIS: Handbook of GOVERNMENT," which 2007-2008 edition details that structure, purpose, function and course of conduct of the enterprise in which the pattern of racketeering activity is taking place.

   Dr. Mannix requests the Court take judicial notice of the Illinois Constitution and the information published in these print and electronic public forums. In support of her answer to this "Checklist Question," Dr. Mannix attaches hereto as **Exhibit M** summary graphs and partial explanations from the Secretary of State's manual on Illinois government. Dr. Mannix requests that the Court take judicial notice of which public officials are elected and/or appointed to

43

their public positions, specifically, appointed by the legislature, governor, other Executive Branch officials, the Supreme Court, lower judges, and/or lower legal entities, e.g., county or municipal boards, under constitutionally-granted home rule, thereby further establishing conspiracy, control, and liability.

c. <u>State whether any defendants are employees, officers or directors of the alleged enterprise</u>: Yes, some defendants are employees, officers, or directors of the alleged enterprise. Please see **Appendix B: Question 2**: Defendants, alleged misconduct, and basis of liability for the listing of same. Some defendants are employees of the enterprise who have signed employment contracts and are paid with taxpayer funds.

d. <u>State whether any defendants are associated with the alleged enterprise</u>: Yes, the remainder of the defendants, not in the categories above, are <u>associated</u> with the alleged enterprise. Please see **Appendix B: Question 2**: Defendants, alleged misconduct, and basis of liability for the listing of same.

e. <u>State whether you are alleging that the defendants are individuals or entities separate from the alleged enterprise, or that the defendants are the enterprise itself, or members of the enterprise</u>: If Dr. Mannix is understanding RICO law, concepts, and elements correctly, she finds this question somewhat repetitive and therefore creates some confusion. There is the legitimate legal entity and business enterprise. Then there is the racketeering enterprise operating within the legitimate business enterprise. The defendants are individuals who are employed by or associated with the legitimate business enterprise. So they are "members" of the legitimate business enterprise. And the defendants are **separate** from the

legitimate business enterprise such that the legal entity, the State of Illinois, and its sub-legal entities have lawfully operated and will continue to lawfully operate if this Court holds accountable the defendants using the State of Illinois and its sub-legal entities as the venue in which their racketeering enterprise is operating. Therefore, the defendants are not the "enterprise itself" and are separate from the enterprise. Again, some defendants are employees and some are associated with the enterprise so in that way that could be called "members" of the enterprise. But again they are "separate" from the enterprise and are not the legitimate business enterprise itself.

f. <u>If any defendants are alleged to be the enterprise itself, or members of the enterprise, explain whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.</u> Dr. Mannix has asserted that the currently named defendants are not the enterprise itself, but are employees, officers, directors, and/or associated "members" utilizing the venue provided by the lawful enterprise to perpetrate racketeering predicates in a pattern of racketeering activity in a racketeering enterprise against Dr. Mannix and other citizens. The defendants are <u>perpetrators</u> of the alleged racketeering enterprise operating in the legitimate business enterprise. Dr. Mannix contends that at one time the defendants were probably victims and/or passive instruments of the crimes, but, because they betrayed their own souls and violated their oaths of office, employment contracts, professional codes of conduct, and/or fundamental civil and moral obligations to obey the law and report state and federal criminal acts, they have all become perpetrators.

45

7. <u>State and describe in detail whether you are alleging that the pattern of racketeering
activity and enterprise are separate or have merged into one entity.</u> Again, they are
separate. The legal entity, the State of Illinois, and its sub-legal entities provide the
venue in which the defendants are carrying out the pattern of racketeering activity. Dr.
Mannix believes that there are individuals in similar positions as the defendants who are
not perpetrating racketeering predicate acts in violation of RICO law. There are judges,
attorneys, court-appointed professionals, clerks, deputies, etc., who are not breaking the
law and are not turning a blind eye to those who are. Some of them have probably been
fired or have quit. Some of these courageous individuals have helped Dr. Mannix avoid
false arrest!! On <u>April 26, 2006</u>, Deputy Banks stopped Deputy Sanchez from hurting
Dr. Mannix when Def. Shields had Dr. Mannix unlawfully detained in a back room
behind her courtroom for an hour due to Def. Shields violation of Dr. Mannix and her
IFCAA co-member, Maria Szczypta's First Amendment Rights to Association. In
August 2006, a Lake County employee alerted Dr. Mannix that herself and other IFCAA
co-members had been "blacklisted," specifically referring to the fraudulent Intelligence
Bulletin initiated by Def. Shields on <u>August 16, 2006</u> that was disseminated by the Cook
County Sheriff's Office to other counties in the state. Because of this individual, Dr.
Mannix knew to subpoena the fraudulent document which is the basis for some of Dr.
Mannix's wire fraud counts. In <u>September 2006</u>, when IFCAA co-member, Michael
Lynch's brother, Kevin, was targeted for false extradition to Florida, a courageous Cook
County Sheriff's Deputy refused to send Kevin because he did not match the physical
description of the "Kevin Lynch" wanted in Florida. Kevin told Dr. Mannix that it was
stated that "the order was coming from upstairs," namely the officer was being pressured

to break the law by authorities in the Daley Center. The officer refused to break he law against Kevin and released him from custody.

8. <u>Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.</u> Again, the alleged relationship between the activities of the enterprise and the pattern of racketeering activity is specifically that the lawful, normal operating procedures of the State of Illinois and its sub-legal entities, e.g., the Circuit Courts, Sheriff's Offices, State's Attorney's Offices, and Attorney General's Office, disciplinary agencies, legislative bodies, etc., are corrupted to exploit litigants for financial gain through prohibited criminal racketeering activity. For example, custody battles are **fabricated** by racket participants in normal pre-divorce and post-divorce proceedings to generate attorney's fees and evaluation costs, etc., through extortion under the color of official right and the wrongful use of actual fear of the loss of custody of the victims' children. Another example is the corrupt judges use their deputies as their thugs against victims of the racket, just like mob gangsters, to make their victims submit to their crimes against them.

9. <u>Describe what benefits if any, the alleged enterprise receives from the alleged pattern of racketeering.</u> Financial benefits from private and government funds.

10. <u>Describe the effect of the activities of the enterprise on interstate and foreign commerce.</u> Dr. Mannix needs assistance of counsel here, but at this time she alleges that there are five potential levels of the effects of the racketeering activities being carried out in the enterprise on interstate commerce. [Discovery, supervised and enforced by this Court, is needed to fully detail the effect on interstate and foreign commerce.]

[1] One level is the effect of the inflated operating costs of the circuit court, et al, on the available funds of the legal entities to engage in interstate commerce. (Legitimate business enterprise's engagement in interstate commerce has been established by the Seventh Circuit.)

[2] A second level which is related to the first level is the effect of increased county and state taxes as a result of the racketeering activities which have an adverse effect on residents' businesses and personal engagement in interstate commerce. Cook County has the highest taxes in the country.

[3] Another level is the direct effect of the racketeering predicates of extortion and bribery on the <u>business funds</u> of the exploited litigants and the honest state court agents which result in a "depletion of assets" of said victims of the pattern of racketeering activity that directly affects their ability to engage in their typical interstate commerce. (Hobbs Act)

[4] The fourth level is the effect of the racketeering predicates on the <u>personal funds</u> of the exploited litigants and their families which result in a "depletion of assets" of said victims of the pattern of racketeering activities that directly affects their ability to engage in their typical interstate commerce. (Hobbs Act)

[5] The fifth level involves the racketeering predicates of tampering with and retaliation against witnesses, victims, or informants, through pathologizing and criminalizing the victims, which directly irreparably harms the victims' <u>careers and reputations, thereby directly harming the victims' business income and interstate business activities</u>.

48

As previously referenced on pages 19 to 21, the case law created by the Seventh Circuit as a result of the attempts of convicted defendants of Operations Greylord and Gambat to overturn their convictions provides ample descriptions of the impact of the racketeering predicates on the victims' engagement in interstate commerce and the effect of the racketeering activities on the legitimate business enterprises' engagement in interstate commerce, which apply to all the legal sub-entities of the State of Illinois on the state, county, and local levels.

11. If the complaint alleges a violation of 18 U.S.C. 1962(a), provide the following information:

     a. State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and

     b. Describe the use or investment of any such income.

**Not applicable**.

12. If the complaint alleges a violation of 18 U.S.C. 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.

**Not applicable**.

13. If the complaint alleges a violation of 18 U.S.C. 1962(c), provide the following information: Yes, this complaint alleges violation of 18 USC 1962(c) which "prohibits anyone employed by or associated with an enterprise engaged in or whose activities affect interstate or foreign commerce from participating in its affairs through a pattern of racketeering activity."

a. <u>State who is employed by or associated with the enterprise:</u> See previous answers to Question 6 herein. See **Appendix B: Question 2**: Defendants, alleged misconduct, and basis of liability

b. <u>State whether the same entity is both the liable "person" and the "enterprise" under 1962(c).</u> Dr. Mannix may need assistance of counsel here but at this time she states that the answer is, no, the same entity is not both the liable "person" and the "enterprise" as detailed previously at Question 6 above. However, Dr. Mannix is not clear if the criminal acts of a corrupt public employee make their legitimate employer liable, specifically, the State of Illinois, Cook and Lake Counties, individual municipalities, etc.

14. <u>If the complaint alleges a violation of 18 U.S.C. 1962(d), describe in detail the alleged conspiracy.</u> Yes, this complaint alleges violation of 18 USC 1962(d) which "prohibits conspiracies to violate section 1962(c)." Please see **Appendix E: Question 5**: Presentation of the Pattern of Racketeering Activity for graphic presentations of the conspiracy to violate section 1962(c) by the multiple defendants in the four escalating rounds of the bribery scheme. **Specifically, the violation of 18 USC 1962(c) can only take place through the *well-oiled* conspiracy between the defendants**. In Cook County, Illinois, the conspiracy between the defendants is exemplified by the circuit court's partnership with the bar association and the bar association's partnership with mental health associations at which illicit business relationships are generated. Dr. Mannix, a clinical psychologist, <u>directly witnessed same</u> at a Chicago Bar Association Forensic Workshop on Alienation in February 2002. [See **Consolidated Exhibit N**] Additionally, Dr. Mannix can produce a witness at trial who can testify to regular, after

hours, in chambers meetings between judges, attorneys, and evaluators engaged in conspiracy to commit racketeering predicates in a pattern of racketeering activity in Cook County Circuit Court. From an FOIA request, Dr. Mannix obtained confirmation of the conspiracy among public officials in Lake County involving the Lake County State's Attorney Michael Waller, Lake County Administrator Barry Burton, all members of the Lake County Board, and Lake County ex-Chief Judge David Hall. [**Exhibit O**] Dr. Mannix has ample evidence to prove conspiracy in violation of section 1962(d) of fully-informed, responsible, and liable public officials in the violation of section 1962(c) and 18 U.S.C. §§§ 2, 3 & 4, who have attempted to "pass the buck." [**Consolidated Exhibit P**]

15. Describe the alleged injury to business or property. Dr Mannix needs assistance of counsel to answer this question because it is too emotionally-charged. Suffice to say, before Def. Sheetz in conspiracy with Defs. O'Donnell and Pechnick filed the vexatious petition for sole custody in January 2002, which petition evidences the racketeering predicates of perjury and subornation of perjury, Dr. Mannix was a high functioning professional, actively engaged in for-profit and non-profit, intrastate and interstate business activities through her private clinical practice and three corporations she created, Sperry Mannix Corporation (1994), In all Our Best Interest (1995), and Montessori Peace School (2001). [**Consolidated Exhibit C**] While seeing patients in her private clinical psychology practice, seeking investors, and completing her trademarked curriculum, in October 2001, she launched her website, www.gyropower.com, with her technology partner, Appogee Strategies. In December 2001, she held her first fundraising meeting for the school she was founding, the Montessori Peace School, and obtained a

contribution of $100,000 and partners. Dr. Mannix was at the top of her game, so to speak. The following month, with the January 2002 filing of the vexatious sole custody suit with false allegations of abuse by her against her children for the purpose of attempting to avoid child support obligations, which was filed seven months after the entry of the June 2001 order against Defendant Sheetz for a small increase in child support and the first arrears award for non-compliance with child-related obligations, Dr. Mannix was **"dragged into the dark alley"** of Illinois' family court and has been and is being mugged.

Specifically, Dr. Mannix's ability to (1) engage in her private clinical practice, (2) seek investors for her for profit and non-profit business endeavors, and (3) promote the school for adolescents she was founding was severely compromised with a sole custody petition alleging child abuse by her. Dr. Mannix is not a stock broker. She is a clinical psychologist founding a school for adolescents. As a DIRECT result of the "mugging," she has been turned in as an alleged domestic terrorist and had a fraudulent Intelligence Bulletin disseminated that looks like a WANTED POSTER!!!! As a result of the first round of the racketeering activities, extreme and irreparable damage to her career and reputation was exacted when the first fraudulent report created by the Group One Conspirators was distributed by Def. Wessel to Def. Sheetz, Dr. Mannix's perpetrator, on March 7, 2003. The report alleged that Dr. Mannix was severely mentally ill, delusional and in need of psychiatric medication. The fraudulent report was released at the same time that Dr. Mannix obtained *pro bono* representation from Kirkland and Ellis, LLP for the zoning lawsuit for the Montessori Peace School through the Institute for Justice in Washington, DC. Subsequently, the settlement proposal by Def. Wessel gave Dr.

Mannix sole custody if all the involved defendants' bribes and extortion, i.e., attorneys' fees, were paid including the $27,000 extorted for the report itself. Def. Sheetz has used the report to further harass and commit slander against Dr. Mannix by spreading the known falsehood that Dr. Mannix is allegedly mentally ill in the communities in which Dr. Mannix practiced and was founding a school!!! As a result of the second round of the racketeering predicates, including extortion of $6,000 for Grossman, further extreme and irreparable damage to Dr. Mannix's reputation and career, and especially to her efforts to found the Montessori Peace School, was perpetrated when the **first fraudulent order of protection was faxed to the children's Montessori school in Lake Forest in February 2004 constituting wire fraud**. Said order of protection was obtained with fully documented acts of coercion under duress or ACTUAL FEAR, perjury, subornation of perjury, and extortion by the Group Two Conspirators. As a direct result of racketeering predicates of Group Two, Dr. Mannix had to pay legal fees of **$180,000 in one year** to save her children and be in a position to stop the RICO crimes against her children and herself. BUT JUDGE VEGA RECUSED BECAUSE SHEETZ THREATENED BLACK RECTOR when Vega froze his E-Trade and bank accounts!! Note the Wessel submitted to Kaufman THE SAME EXACT SETTLEMENT AGREEMENT of April 2003, after the first false report for $27,000, after the second corrupt evaluator Grossman got $6,000 and committed perjury with Sheetz on the stand to get the first fraudulent OP. **THE SAME EXACT DOCUMENT was submitted by Wessel in March 2005 giving Mannix sole custody is she paid all their bribes and legal fees obtained with extortion, et al.** The Group Three Conspirators in conspiracy with Groups Four and Five are responsible for the Intelligence Bulletin, et al., the extortion of $15,750 directly from

Dr. Mannix's mother in Connecticut, the loss of her home in 2007, etc., etc. while a default judgment for over $100,000 sat unadjudicated before Donegan and ALL SUBSEQUENT JUDGES since October 2004.

Further damage to Dr. Mannix's property includes the [can't continue – physically sick]

16. Describe the direct causal relationship between the alleged injury and the violation of the RICO statute. Please see Question 15 above and Question 17 below.

17. List the damages sustained for which each defendant is allegedly liable. Please see **Appendix F Question 17: Damages** for the answer to RICO Checklist Question 17.

18. List all other federal causes of action, if any, and provide the relevant statute numbers.

Dr Mannix needs assistance of counsel to answer this question. She is not sure what the federal causes of action would be called but believes some of the statutes involved are:

31 U.S.C. Sections 3729-33

18 U.S.C. 1514 and 18 U.S.C. 3332

Violence Against Women Reauthorization Act

18 U.S.C. 241, 18 U.S.C. 242, 18 U.S.C. 245, 18 U.S.C. 2, 3, and 4

28 U.S.C. 2283

42 U.S.C 666(a)(9)(C) and 18 U.S.C. 228

42 U.S.C. 1986, 42 U.S.C. 1983, 42 U.S.C. 1985, 42 U.S.C. 1981

Civil rights action for violations of First Amendment Rights to Association

19. List all pendent state claims, if any. One state claim regarding the alleged predicate acts initiated, after hours, by defendant-ex-judge Karen G. Shields on August 16, 2006 in violation of the federal statutes, 18 USC §§ 1512 and 1513. In Lake County Case No. 07

L 646, Mannix and Mehringer v. Shields, a defamation *per se* complaint, the state court

granted the defendant-ex-judge's Motion to Dismiss on grounds of judicial immunity.

The involuntary dismissal is currently on appeal in the Second District Appellate Court.

The defendant-ex-judge is represented by defendant Illinois Attorney General Lisa

Madigan. The trial court judge was Def. McKoski who knew Dr. Mannix from when she

was before him, represented pro bono by Kirkland & Ellis, LLP, for the Montessori

Peace School zoning litigation. [Lake County Case No. 06 CH 1452 previously

incorporated.]   An action to remove the case to this Court will be discussed with the

assistance of counsel given alleged involvement herein of the Second District Appellate

Court as an alleged wrongdoer, et al. [28 U.S.C. § 1441].

20. Provide any additional information that you feel would be helpful to the court in

processing your RICO claim. Respectfully and humbly, on behalf of the disenfranchised

children of the nation who are suffering as a direct result of the same pattern of

racketeering activity detailed herein, in anticipation of multiple motions to dismiss the

claim and/or to remove specific defendants from the claim, Dr. Mannix asserts, *in

arguendo*, **why hasn't the Illinois Attorney General's Office contacted Dr. Mannix**

**regarding the verified judicial "bribery scheme" in the Circuit Court of Cook**

**County?** One could argue with confidence that in light of (1) IFCAA's June 19, 2006

national press release and (2) the report that approximately two weeks after Dr. Mannix

filed into the record of Illinois Supreme Court Case No. 105344, on September 19, 2007,

a document she received from "Informant X" allegedly indicating the involvement of

Def. Madigan in unlawful interstate activity involving an organized crime family in

Arizona, two Assistant Attorney Generals attempted to interrogate IFCAA co-member

Michael Lynch at his place of employment (without his attorney, Mr. Durkin, present)

regarding false allegations of his IFCAA co-member, Dr. Mannix, practicing law without

a license, Dr. Mannix has just cause to place Def. Madigan, the executive attorney of the

People of the State of Illinois, which includes the disenfranchised innocent, suffering

children of Illinois, as the first defendant of this RICO complaint. This is especially

disconcerting because making false allegations of practicing law without a license and

making other false allegations against witnesses and victims of RICO crimes who are

standing up to said crimes by virtue of acts protected by the Federal Constitution

including the First Amendment rights to Free Speech and Association, is a well-

established racketeering predicate act committed in the pattern of racketeering activity.

[Def. Madigan, 10/07; Defs. Wessel, Asher, and Rissman, 6/28/07; Def. Brewer.

12/20/07; Def. Shields, 9/26/06 & 10/06; Judge White, 10/4/06 and 12/20/06; Attorney

Michael Braun, 05/17/07; "Any form of official retaliation for exercising one's freedom

of speech, including prosecution, threatened prosecution, bad faith investigation, and

legal harassment, constitutes an infringement of that freedom." Worrell v. Henry, 219

F.3d 1197, 1212 (10th Cir. 2000).]

21. Lastly, Dr. Mannix quotes herein from the previously incorporated Lake County

Recorder's Office Document No. 6324306, which is her unopposed affidavit executed

and entered into the public record on March 27, 2008, and which was served upon the

Illinois Attorney General's Office on March 28, 2008 in Lake County Case No. 07 OP

1512, and confirmed received on April 1, 2008. Def. Madigan was representing another

ex-judge, Def. J. Waller, in the matter:

> 19. I have attached hereto for entry into the public record of Lake County a few of
> the documents I received from organized crime family informant, "Informant X,"

which, in part, formed the basis of my testimony about which the First District Appellate court made the aforementioned finding, "she produced direct evidence regarding several other judges' involvement in the bribery scheme."

20. I am of information and belief that I have been unable to find a state or federal trial, appellate, or supreme court judge to uphold my teenaged sons' and my constitutional and civil rights and liberty interests as well as enforce binding state and federal civil and criminal laws in my family's post-divorce case and protection order cases because of the apparent involvement of multiple Circuit Court of Cook County judges in an interstate organized crime family enterprise involving the Sucato Family and the Maricopa County Recorder's Office in Arizona about which I testified under oath on October 13, 2006 in the Cook County Case No. 98 CH 11007, Mary Carr and Mario D'Agostino v Michael Lynch, et al.

21. I am of information and belief that the copies of the documents that are attached hereto that I received from "Informant X" indicate the involvement of the named judges, solely and in conspiracy with other state court agents, in illegal acts within and across state lines.

22. Further, I am of information and belief that the extreme retaliation against my sons and me by the named judges supports the finding of the First District Appellate Court, namely, "she produced direct evidence regarding several other judges' involvement in the bribery scheme," such that the retaliation against my sons and me meets the elements of violations of the Illinois Criminal Code of 1961, Article 32: Interference with Judicial Procedure, Section 32-4a: Harassment of Witnesses and meets the elements of violations of the federal statutes, 18 USC § 1512: Tampering with a Victim, Witness, or an Informant, and 18 USC § 1513: Retaliating Against a Victim, Witness, or an Informant in pending or potential proceedings.

23. I have attached pages 73 to 75 of the certified Report of Proceedings of the end of my testimony in the aforementioned D'Agostino v. Lynch case to put into the public record the fact that my IFCAA co-member, Michael Lynch, and myself do not believe that all judges are corrupt. However, we have been blessed with the burden of service to our fellow Americans and are obligated to uphold our civil and moral duty to expose the irrefutable evidence that some judges are corrupt and these judges are a "clear and present danger to the administration of justice," especially in cases involving the nation's children. [PR 005 – PR 008]

24. I restate and reaffirm the statements I made at the national Family Preservation Day rally on August 18, 2007 at the foot of the Lincoln Memorial in our nation's capital:

And most important to my presentation today, we were networked with organized crime family informants.

Please understand that IFCAA members did not ask to become aware of organized crime

informants.

We did not ask for this cross to bear and become moms and dads against the mob. But we will shoulder this burden with honor and integrity on behalf of the suffering children of our nation and on behalf of our law enforcement officials, soldiers and veterans.

People say that we are crazy.

My response is that if you think that our belief in justice and our great US Constitution is crazy then you have made a statement about yourself, not me and my co-members of IFCAA.

People ask me if I am afraid.

And I respond, of course I am afraid, I'm not crazy!

But I am more afraid of waking up one day and looking in the mirror to see a woman who has sold her soul to this fear. And in the face of this fear, I just have to think of our suffering children and our suffering soldiers and veterans who are alone in the dark of night - wounded, abused, or wondering if their protective mom or dad or their country has abandoned them. And when I think of them, I am filled with indomitable courage to stand up to my moral and civil duty to them.

I ask you to stand up with me and my IFCAA co-members.

## PRAYER FOR RELIEF

WHEREFORE, your Plaintiff, SHEILA A. MANNIX, respectfully and humbly prays,

regarding each and every RICO Act claim detailed in Appendix A: RICO Act Claims, herein and

in amended complaints, for judgment against the defendants, jointly and severally, in such

amounts as shall appear due and owing, plus attorneys fees and costs, and such other relief as

equity and justice deems appropriate to deter similar unlawful acts in the nation's family courts

aided and abetted by individuals employed by and associated with state, county, and municipal

entities responsible to hold rackets in check. Jury Demand Requested.

Date: January 7, 2009                              Respectfully submitted,

SHEILA A. MANNIX
318 W. Half Day Rd., #196
Buffalo Grove, Illinois 60089
(847) 971-6679

## AFFIDAVIT OF SHEILA A. MANNIX

I, Sheila A. Mannix, being first duly sworn, on oath, states as follows:

1. I am a natural born citizen of the Untied States and reside in Lake County, Illinois. I am forty-eight-years-old and am under no legal disability. I have personal knowledge of the events and facts referenced herein and could testify competently to them if called upon to do so.

2. I created the attached civil RICO Act complaint with supplemental filings about which this affidavit is attesting integrity as an unrepresented, non-attorney litigant.

3. The alleged facts supported with attached and/or incorporated evidence are true and correct to the best of my personal knowledge of the facts and evidence.

4. The alleged facts stated without attached evidence and/or incorporated evidence I believe to be true and correct to the best of my personal knowledge, information, and belief.

5. I admit that, as a direct result of my experiences with attorneys and judges in state and federal trial and reviewing courts over many lost years, I have difficulty discerning what constitutes an allegation of fact and what constitutes a legal conclusion because of an unconstitutional, discriminatory double-standard such that when I make allegations of fact as an unrepresented, non-attorney litigant, they are disregarded as "my opinion" or a legal conclusion. Conversely, when attorneys make legal conclusions, self-interest-driven rationalizations, opinions, and/or blatant falsehoods, they are deemed allegations of fact. For example, when I quote the First District Appellate Court finding regarding the judicial "bribery scheme," judges and attorneys claim that this is "my opinion" versus an allegation of fact regarding an appellate court's opinion issued on February 27, 2008 and corrected and reissued on April 2, 2008.

6. I request that the word "alleged" be inserted by the reader wherever it is supposed to be inserted to maintain the lawfulness of my document. I apologize for its inadvertent omission in places where it should appear due to my lack of knowledge and understanding. And due to the irreparable harm, injury, loss, and damage I have sustained as a direct result of the verified judicial "bribery scheme" crimes against me, my children, and my family on the East Coast such that I really don't know when I am supposed to say alleged and when I am not because, **without any evidence or due process whatsoever**, I have been so utterly criminalized, defamed, pathologized, and impoverished and my children judicially kidnapped for over three years and irreparably harmed beyond measure, solely for money and in retaliation for my sons and my asserting our federally-protected, constitutionally-secured civil rights and liberty interests to judges with the same level of moral turpitude as the late Judge James G. Donegan who stated on court record in response to my attorney, Glen Kaufman, directly asking Judge Donegan what he is supposed to tell his client because Judge Donegan refused to enforce Judge Vega's perfunctory orders for relief for me and my children, "Tell her the Judge is an S.O.B. There, you got it. You don't have to worry about it." (March 28, 2005, Page 37, Lines 12-14) A most definitive statement of malicious RICO crimes and conspiracy to commit

RICO crimes against me and my children as ever was so defiantly uttered.

7.  Further sayeth naught.

*SHEILA A. MANNIX*

SHEILA A. MANNIX

SUBSCRIBED and SWORN to before me on
this 7th day of January, 2009.

NOTARY PUBLIC

```
OFFICIAL SEAL
PIA VAN AUKEN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES NOVEMBER 11, 2009
```